T.C. Memo. 2009-144

UNITED STATES TAX COURT

NORMAN J. CYMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22186-05L.                    Filed June 22, 2009.

Norman J. Cyman, pro se.

<u>Steven W. LaBounty</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner

seeks review of respondent's determination to sustain a notice of

Federal tax lien with respect to petitioner's unpaid Federal

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code), and all Rule references are to
the Tax Court Rules of Practice and Procedure.

income tax liabilities for 1989-97.  The issues for decision are:
(1) Whether petitioner is precluded from contesting his
underlying Federal income tax liabilities for 1989-97; (2)
whether respondent abused his discretion in upholding the notice
of Federal tax lien; and (3) whether the Court should impose a
penalty under section 6673(a)(1).

                        FINDINGS OF FACT

        Some of the facts have been stipulated.  We incorporate the
stipulated facts into our findings by this reference.  Petitioner
resided in Missouri when his petition was filed.

I.    Petitioner's Unpaid Federal Income Tax Liabilities for
      1989-97

        Petitioner failed to file his Federal income tax returns for
1989-97.  Respondent prepared substitutes for returns for
petitioner under section 6020(b).  In late December 1997
respondent notified petitioner by certified mail that petitioner
was the subject of a criminal investigation regarding his Federal
income tax liabilities for 1989-97.

        On September 14, 1998, petitioner submitted to respondent
"zero" Forms 1040, U.S. Individual Income Tax Return, for 1989-97
(zero returns).[2]  Petitioner signed each zero return with a
notation "Without prejudice UCC-1-207" and attached to each

---

[2]Petitioner believed that he was under a criminal
investigation and that filing zero returns would preserve his
constitutional rights.

return a letter containing frivolous arguments, including: (1) No section of the Code made him liable for income tax, (2) the Form 1040 instructions stated that filing Federal income tax returns was voluntary, and (3) providing information to the Government that could be used against him was inconsistent with the Fifth Amendment to the U.S. Constitution. Respondent did not treat the zero returns as valid returns. At some point in 1998 respondent began an examination for petitioner's 1989-97 years.

From 1991-2002 petitioner lived in Mount Vernon, Illinois. During 1998 and 1999 petitioner leased P.O. Box 425 at the post office in Mount Vernon, Illinois 62864. He retrieved mail from his post office box once every 1-2 weeks.

Petitioner received correspondence from respondent's Criminal Division at his home address. However, during the examination of his 1989-97 returns, petitioner used the post office box address on his correspondence with the examining agent.

On July 27, 1999, respondent mailed to petitioner by certified mail in one envelope addressed to P.O. Box 425, Mount Vernon, Illinois 62864, three separate notices of deficiency for 1989-91, 1992-94, and 1995-97.[3] On July 29 and August 3, 1999,

---

[3]After respondent prepared substitutes for returns for petitioner under sec. 6020(b), petitioner requested a hearing with the Appeals Office before respondent issued the notices of deficiency. The Appeals Office reviewed the case and determined
(continued...)

the U.S. Postal Service (USPS) placed USPS Forms 3849 in petitioner's post office box notifying him that he needed to pick up certified mail.  Petitioner did not claim the certified mail, and on August 13, 1999, the USPS returned the envelope with the notices of deficiency to respondent as unclaimed.  Petitioner did not file a petition with the Court disputing respondent's determinations in the notices of deficiency.

On February 7, 2000, respondent assessed petitioner's Federal income tax liabilities, interest, and additions to tax under section 6651(a)(1) and (f) for fraudulent failure to file returns for 1989-97, section 6651(a)(2) for failure to pay the tax for 1996 and 1997, and section 6654 for failure to pay estimated taxes for 1989-97.

II.  Respondent's Collection Actions

On July 13, 2004, petitioner sent a letter to respondent's service center in Holtsville, New York.  The letter stated that petitioner believed he had no Federal income tax liabilities and that he relied on U.S. Supreme Court decisions, congressional testimony, respondent's statements, and a legal opinion.[4]  On

---

[3](...continued)
that petitioner had failed to raise any nonfrivolous issues in his request for an appeal.  The case was then referred to the Examination Division for issuance of the notices of deficiency.

[4]Petitioner enclosed various documents, including a letter dated Apr. 1, 1996, from Attorney Gary Peel in which Gary Peel concluded that no section of the Code made a human being liable
(continued...)

July 14, 2004, respondent prepared a notice of Federal tax lien with respect to petitioner's unpaid Federal income tax liabilities for 1989-97.  On July 16, 2004, respondent mailed a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (notice of lien).[5]  On July 27, 2004, respondent filed the notice of lien in the county recorder's office for Stone County, Missouri, with respect to petitioner's unpaid Federal income tax liabilities for 1989-97.

On August 25, 2004, respondent received petitioner's Form 12153, Request for a Collection Due Process Hearing, concerning the notice of lien.  In a letter attached to his Form 12153, petitioner repeated his contention expressed in the July 13, 2004, letter, that on the basis of advice from "tax expert sources" he believed he had no Federal income tax liabilities. Petitioner also enclosed a copy of his July 13, 2004, letter.

Petitioner's case was assigned to Settlement Officer Keith R. Cummings (Mr. Cummings).  On March 9, 2005, Mr. Cummings sent petitioner a letter scheduling a hearing for April 4, 2005.  In the letter Mr. Cummings advised petitioner that during the

---

[4](...continued)
for an income tax, required the filing of a Form 1040, or defined income.

[5]The notice of lien states incorrect assessment dates, but that error does not invalidate the notice of Federal tax lien. See United States v. Hanson, 96 AFTR 2d 2005-7174, at 2005-7176, 2006-2 USTC par. 50,557, at 85,691 (D. Minn. 2005).

hearing he could consider whether petitioner owed the amount due, but only if petitioner had not had an opportunity to dispute it with the Appeals Office. Mr. Cummings also advised petitioner that if he wanted Mr. Cummings to consider alternative collection methods, he should submit a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and/or Form 433-B, Collection Information Statement for Businesses, and file all Federal income tax returns due. Mr. Cummings mailed petitioner Form 433-A and Form 433-B.

On March 31 and April 1, 2005, petitioner called Mr. Cummings to request a face-to-face hearing at the St. Louis, Missouri, Appeals Office and an additional 30 days to prepare for the hearing. Mr. Cummings and petitioner agreed that Mr. Cummings would hold a face-to-face hearing at respondent's Kansas City, Missouri, office on May 3, 2005. Mr. Cummings then mailed petitioner another set of Forms 433-A and 433-B, which petitioner had agreed to complete and return to Mr. Cummings before the hearing. Petitioner did not complete the Form 433-A and/or Form 433-B.

On April 28, 2005, Mr. Cummings received from petitioner a fax in which petitioner asked Mr. Cummings to "remove any liens and zero out any purported liability", demanded that Mr. Cummings explain in writing what sections of the Code made petitioner liable for tax, and asserted other tax-protester arguments. On

May 2, 2005, petitioner called Mr. Cummings and advised him that he would not attend the face-to-face hearing but instead would call Mr. Cummings on May 3, 2005.

On May 3, 2005, Mr. Cummings held a telephone hearing with petitioner. During the hearing petitioner again asserted that he did not owe the underlying tax and that respondent had never explained to him what laws made him liable for Federal income tax or responsible for filing Federal income tax returns.[6] Petitioner offered to resolve his unpaid Federal income tax liabilities with one $500 payment or $100 payments for the following 12 months.[7] Because petitioner had failed to submit a Form 433-A and/or a Form 433-B, Mr. Cummings told him that he could not consider collection alternatives.

After the hearing Mr. Cummings mailed petitioner copies of the provisions they had discussed. Mr. Cummings also sent petitioner a Form 656, Offer in Compromise, but petitioner did not submit a completed Form 656 to Mr. Cummings.

On October 21, 2005, respondent sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320

---

[6]The record indicates that the Appeals Office considered petitioner's tax liabilities for the periods at issue before the notices of deficiency were issued. The record contains no indication that petitioner asserted at the sec. 6320/6330 hearing that he did not receive the notices of deficiency.

[7]Petitioner did not fill out any forms for his offer-in-compromise.

and/or 6330 sustaining the notice of Federal tax lien.  In the notice of determination respondent stated that petitioner had failed to raise any nonfrivolous issues or offer a reasonable collection alternative.  Accordingly, the Appeals Office upheld the filing of the notice of lien.

With respect to Mr. Cummings's refusal to consider petitioner's underlying tax liabilities, in the attachment to the notice of determination, the Appeals Office stated:  "The deficiency notice was mailed by certified mail to the taxpayer's last known address.  Delivery was attempted by the post office on two separate occasions.  Each time the taxpayer refused to claim the certified mailing, according to the envelope returned by the postal service."

Petitioner filed a timely petition contesting the notice of determination.  Respondent filed two motions for summary judgment and to impose a penalty under section 6673.  The Court denied both motions because a relevant fact, whether petitioner had received the notices of deficiency, was in dispute. Subsequently, the Court conducted a trial at which petitioner testified.  During the trial petitioner, who had been warned on several occasions about making frivolous arguments, stated his intention to end his tax-protester behavior.[8]

---

[8]Petitioner testified that he had been filing his Federal income tax returns since 2000.

OPINION

## I.   Collection Hearing Procedure

Section 6321 imposes a lien in favor of the United States on all property and property rights of a taxpayer liable for taxes after a demand for the payment of the taxes has been made and the taxpayer fails to pay those taxes.  The lien arises when the assessment is made.  Sec. 6322.  Section 6323 generally requires the Secretary to file a notice of Federal tax lien with the appropriate State office for the lien to be valid against certain third parties.  Section 6320(a) requires the Secretary to send written notice to the taxpayer of the filing of a notice of lien and of the taxpayer's right to an administrative hearing on the matter.  Section 6320(b) affords the taxpayer the right to a fair hearing before an impartial officer.  Section 6320(c) requires that the administrative hearing be conducted pursuant to section 6330(c), (d) (other than paragraph (2)(B) thereof), and (e).

At the hearing a taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and possible collection alternatives.  Sec. 6330(c)(2)(A).  A taxpayer may contest the validity of the underlying tax liability, but only if the taxpayer did not receive a notice of deficiency or otherwise have an opportunity to dispute the tax liability.  See sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000).

The phrase "underlying tax liability" includes the tax deficiency, additions to tax, and statutory interest. Katz v. Commissioner, 115 T.C. 329, 339 (2000).

Following a hearing, the Appeals Office must issue a notice of determination regarding the validity of the filed Federal tax lien. In making the determination the Appeals Office is required to take into consideration: (1) Verification presented by the Secretary that the requirements of applicable law and administrative procedure have been met; (2) relevant issues raised by the taxpayer; and (3) whether the proposed collection action appropriately balances the need for efficient collection of taxes with a taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3).

If the taxpayer disagrees with the Appeals Office's determination, the taxpayer may seek judicial review by appealing to this Court. Sec. 6330(d). Where the validity of the underlying tax liability is properly at issue, the Court reviews the determination regarding the underlying tax liability de novo. Sego v. Commissioner, supra at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the validity of the underlying tax liability is not properly at issue, the Court reviews the determination of the Appeals Office for abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 182.

II.  Whether Petitioner May Challenge the Underlying Tax Liabilities

The parties did not raise the issue of the burden of proof. However, our resolution of the issues is based on the preponderance of the evidence and not on any the allocation of the burden of proof.  See Knudsen v. Commissioner, 131 T.C. __ (2008), supplementing T.C. Memo. 2007-340.

Respondent contends that section 6330(c)(2)(B) precludes petitioner from challenging the existence or the amount of his underlying tax liabilities for 1989-97, because petitioner had deliberately failed to pick up the notices of deficiency for the years at issue.[9]  Petitioner denies receiving the notices of deficiency or the USPS Forms 3849.  He testified that he checked his post office box once every 1-2 weeks and that because he was "programmed" to pick up certified mail, he would have picked up the mail if he had received a USPS Form 3849.

Section 6330(c)(2)(B) contemplates actual receipt of a notice of deficiency by the taxpayer, Tatum v. Commissioner, T.C. Memo. 2003-115, although a taxpayer may not avoid actual receipt

---

[9]In an order denying respondent's first motion for summary judgment, another Judge of this Court stated that respondent did not establish that petitioner had received the notices of deficiency.  However, that statement was made in connection with a summary judgment motion which can be granted only if no relevant fact is in dispute.  See Rule 121.  We explained to petitioner at trial that we construe the order to mean that whether petitioner received the notices of deficiency was in dispute and, therefore, summary judgment was inappropriate.

by deliberately refusing delivery, <u>Sego v. Commissioner</u>, <u>supra</u> at 610-611.  The Commissioner has generally prevailed in foreclosing challenges to the underlying liability under section 6330(c)(2)(B) where he establishes that a notice of deficiency was mailed to the taxpayer's last known address and no factors are present that rebut the presumption of official regularity and of delivery.  See, e.g., <u>Sego v. Commissioner</u>, <u>supra</u> at 610-611; <u>Clark v. Commissioner</u>, T.C. Memo. 2008-155.

The record contains copies of three notices of deficiency, each dated July 27, 1999, for 1989-91, 1992-94, and 1995-97. Each notice of deficiency bears petitioner's name and post office box address.[10]  The record also contains a copy of a certified mailing list, USPS Form 3877.  USPS Form 3877 lists petitioner's name and post office box address and bears a postmark date of July 27, 1999.[11]  Respondent also offered into evidence a copy of the envelope in which respondent mailed the notices of deficiency.

---

[10]Petitioner does not dispute that the post office box address was his last known address.

[11]The Commissioner's employee prepares a USPS Form 3877; the USPS Form 3877 includes the article number for the certified mailing, the description of the document mailed, and the addressee's name and address.  The employee then writes the article number of the particular mailing on the envelope in which the document is mailed.  The USPS stamps a postmark date on the USPS Form 3877.

At trial Cynthia A. Schaefer (Ms. Schaefer), who worked as a postmaster of the Mount Vernon, Illinois, Post Office during July and August 1999, credibly testified about procedures employed at that post office when it received a piece of certified mail addressed to a post office box. A postal employee stamped the envelope with the date it arrived at the Mount Vernon, Illinois, Post Office and completed a USPS Form 3849 and placed it in the addressee's post office box. The USPS Form 3849 notified the addressee that he needed to claim a piece of certified mail. If the addressee did not claim the piece of certified mail, 5 days later the postal service employees placed another USPS Form 3849 in the addressee's post office box. If the addressee again failed to claim the piece of certified mail, after 10 days the postal employees stamped the envelope "Returned to sender" and returned it to the sender. Ms. Schaefer also credibly testified that if the addressee's mailbox were filled with mail, a postal employee pulled out all mail and placed in the post office box a card informing the addressee that he had overflow mail. In such case the postal employee pulled out USPS Form 3849 along with other overflow mail.

Ms. Schaefer also corroborated various postal stamps and marks on the envelope in the record. The envelope bears a stamp establishing that on July 29 and August 3, 1999, the USPS placed USPS Forms 3849 in petitioner's post office box. The same stamp

establishes that petitioner did not pick up the envelope after postal employees placed two USPS Forms 3849 in his postal box, and on August 13, 1999, the post office returned the envelope to the sender. Another stamp on the envelope reads "Returned to sender" and has "unclaimed" checked off as the reason for returning the certified mailing to respondent. Petitioner knew that his 1989-97 returns were under examination because he stipulated that he had sent correspondence to the examining agent, but nevertheless he failed to claim the certified mail after the post office placed two USPS Forms 3849 in his post office box over a 2-week period.

The record contains no credible evidence to rebut the presumption of official regularity. Petitioner's speculation at trial that the USPS Forms 3849 might have gotten lost in the large volume of mail he was receiving or because of possible mishandling by a postal employee is not compelling or convincing evidence of any irregularity occurring in the delivery of the notices of deficiency and the USPS Forms 3849 to his post office box or of nonreceipt of the notices of deficiency and USPS Forms 3849. The post office placed two USPS Forms 3849 in petitioner's post office box over 15 days, and it is unlikely that petitioner overlooked both USPS Forms 3849 or that both USPS Forms 3849 were

lost.[12]  On the preponderance of the evidence we find that petitioner refused delivery of the notices of deficiency for the years at issue and therefore is deemed to have received them. Accordingly, petitioner could not challenge the underlying tax liability at the section 6330 hearing, see <u>Sego v. Commissioner</u>, 114 T.C. at 611; <u>Clark v. Commissioner</u>, <u>supra</u>, and petitioner's underlying tax liabilities are not properly before the Court, see <u>Sego v. Commissioner</u>, <u>supra</u> at 611; <u>Goza v. Commissioner</u>, 114 T.C. at 182.

III. <u>Review of the Notice of Determination for Abuse of Discretion</u>

Because the validity of the underlying tax liability is not properly at issue, we review the notice of determination for abuse of discretion.  <u>Sego v. Commissioner</u>, <u>supra</u> at 610; <u>Goza v. Commissioner</u>, <u>supra</u> at 182.  In reviewing for abuse of discretion under section 6330(d)(1), generally we consider only arguments, issues, and other matters that were raised at the section 6330 hearing or otherwise brought to the attention of the Appeals Office.  <u>Magana v. Commissioner</u>, 118 T.C. 488, 493 (2002); see also sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.  The Appeals Office abuses its discretion if its "discretion has been

_____

[12]During this period petitioner was taking positions with respect to his tax filing and payment obligations that were frivolous and shopworn protester positions.

exercised arbitrarily, capriciously, or without sound basis in fact." Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988).

Petitioner has not advanced any argument or presented any evidence that would allow us to conclude that the determination to sustain the lien was arbitrary, capricious, or without foundation in fact, or otherwise an abuse of discretion. See, e.g., Giamelli v. Commissioner, 129 T.C. 107, 112, 115 (2007). Petitioner has not submitted Form 433-A and/or Form 433-B or offered a reasonable collection alternative. Mr. Cummings verified that all requirements of applicable law and administrative procedure were met. Mr. Cummings concluded that the filing of the notice of Federal tax lien balanced the need for efficient collection of taxes with concerns that the collection action be no more intrusive than necessary. Accordingly, we conclude that respondent did not abuse his discretion in sustaining the notice of Federal tax lien.

IV. Exhibits 29-P Through 34-P

At trial petitioner sought to introduce into evidence Exhibits 29-P through 34-P. The proffered exhibits are petitioner's Forms 1040 for 1992-97[13] with accompanying attachments; the attachments purport to substantiate petitioner's business deductions. Respondent objected to the admission of the exhibits on several grounds, including that petitioner failed to

---

[13]Petitioner did not offer his Forms 1040 for 1989-91.

timely provide respondent with the documents, that he failed to submit the documents to Mr. Cummings and accordingly the documents were not part of the administrative record, and that the records were outside the scope of the pleadings. We reserved our ruling on the admission of the exhibits.

Because we hold that petitioner is precluded from challenging his underlying tax liabilities for 1989-97, any issue regarding the amount of such liabilities is not properly before us in this proceeding, and we review the notice of determination under the abuse of discretion standard. See Sego v. Commissioner, supra at 611. Accordingly, petitioner's Forms 1040 and the accompanying attachments are not relevant to the question of whether Mr. Cummings abused his discretion in upholding the lien filing, see Fed. R. Evid. 401, and we sustain respondent's objections.

V.   Penalty Under Section 6673(a)(1)

Respondent filed two motions for summary judgment and to impose a penalty under section 6673. We denied both motions before trial. However, because petitioner repeatedly asserted frivolous arguments during his section 6320/6330 hearing and before this Court, we shall decide whether to impose a penalty under section 6673.

Section 6673(a)(1) authorizes the Court to require a taxpayer to pay to the United States a penalty in an amount not

to exceed $25,000 whenever the taxpayer's position is frivolous or groundless or the taxpayer has instituted or pursued the proceeding primarily for delay.  Section 6673(a)(1) applies to proceedings under section 6330.  Pierson v. Commissioner, 115 T.C. 576, 581 (2000).  In proceedings under section 6330, we have imposed a penalty on taxpayers who have raised frivolous and groundless arguments with respect to the legality of the Federal tax laws.  See, e.g., Roberts v. Commissioner, 118 T.C. 365, 372-373 (2002), affd. 329 F.3d 1224 (11th Cir. 2003); Eiselstein v. Commissioner, T.C. Memo. 2003-22.

During the hearing and in telephone conferences and correspondence with Mr. Cummings petitioner repeatedly questioned what laws made him liable for Federal income tax, claimed that respondent had violated his rights by failing to answer his question in writing, and asserted that the Code has not been enacted into positive law.  In his petition he stated that respondent applied "prima facia [sic] statutes erroneously to create ficticious [sic] tax liabilities."

Mr. Cummings warned petitioner about taking frivolous positions.  In the notice of determination respondent's Appeals Office warned petitioner that if he persisted in making frivolous arguments before the courts, he might be sanctioned under section 6673.  In our order dated May 10, 2007, and during trial, we also

cautioned petitioner not to continue asserting meritless contentions before the Court.

We note, however, that petitioner heeded respondent's and the Court's continued warnings and generally refrained from asserting frivolous arguments at trial.  We also take into consideration petitioner's testimony that he has filed Federal income tax returns since 2000.  As he stated during trial:  "The tax protest deal and the--it's just old, and it's a chapter of my life that I want to close."  Finally, we consider that petitioner presented a legitimate, nonfrivolous issue at trial.  Although we have resolved that issue against petitioner, we cannot fault him for raising it.  After taking all of these matters into account and in the exercise of our discretion, we decline to impose any penalty under section 6673.

We have considered the remaining arguments the parties made and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.  We sustain respondent's determination that the filing of a notice of Federal tax lien was appropriate.

To reflect the foregoing,

Decision will be entered for respondent.
