T.C. Summary Opinion 2010-8

UNITED STATES TAX COURT

GENISE A. CONNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26978-07S.             Filed January 25, 2010.

Genise A. Conner, pro se.

<u>Deborah K. MacKay</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code (Code) in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $2,681 in petitioner's Federal income tax for 2006. The issues for decision are whether petitioner is entitled to: (1) A dependency exemption deduction for her niece JT;[1] (2) an earned income credit; (3) a child tax credit; and (4) head of household filing status.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Illinois when she filed her petition.

Throughout 2006 petitioner worked as a technician at Heartland Pharmacy, where her main job was premixing medicines for use in hospitals.

JT is petitioner's niece, the daughter of petitioner's brother and his estranged girlfriend, Ms. Tigue. JT was 12 years old in 2006.

In late 2005 Ms. Tigue told petitioner that she had lost her apartment, was out of work, and had no place to live. Ms. Tigue wanted JT both to have a stable place to live and to remain in the same school. Petitioner has seven or eight

---

[1]The Court redacts the names of minors. See Rule 27(a)(3).

grandchildren, most of whom at various times have lived with her.  Petitioner offered to take in JT because two of her grandchildren had recently moved out of her apartment, thereby creating space, and because JT was her niece.  Thus, in late 2005 JT began living with petitioner, and this living arrangement continued until early 2008.

In 2006 petitioner lived in a two-bedroom apartment. Petitioner and her adult niece, Monia Conners, signed a 1-year lease on October 1, 2005, which they renewed in 2006.  The apartment is a second-floor unit consisting of two bedrooms, a living and dining room combination, a kitchen, and one bathroom.

Four people shared this apartment during 2006:  Petitioner, JT, Ms. Conners, and Ms. Conners' daughter (petitioner's grandniece) who was about the same age as JT.  Ms. Conners' daughter slept in one bedroom with Ms. Conners, and JT slept in petitioner's bedroom.  When Ms. Conners was employed, petitioner and Ms. Conners shared the rent and utilities.  However, because Ms. Conners was unemployed for most of 2006, petitioner paid the expenses for the apartment.

Ms. Tigue did not have a permanent residence during 2006. She occasionally stayed overnight at petitioner's apartment.  At other times, petitioner did not know where Ms. Tigue was living

because Ms. Tigue drifted among the homes of various friends and relatives throughout 2006.

JT continued to attend junior high school in the school district where JT and Ms. Tigue had lived before Ms. Tigue lost her apartment, approximately 20 miles from petitioner's apartment. Petitioner usually drove JT to school. If petitioner was unable to take JT to school because of a change in petitioner's work schedule, Ms. Tigue would drop off JT at school in the morning and return JT to petitioner's apartment after school, where the other relatives would care for JT. Occasionally, if petitioner was working late, and no one was in the apartment to care for JT, Ms. Tigue would bring JT to the location where she was living and would care for JT until petitioner arrived to take JT home.

Petitioner was not JT's point of contact on school records. Because Ms. Tigue wanted JT to attend the same school, she did not change JT's school records or contact information. Petitioner did not receive any of JT's report cards from school.

Ms. Tigue worked intermittently during 2006 and did not receive unemployment benefits or any type of public assistance. Petitioner provided all of the support for JT during the year. This included buying JT's food, providing housing, paying for clothing, and providing spending money.

Petitioner engaged a national tax preparation firm to prepare her 2006 Federal income tax return.  Petitioner filed as a head of household, claimed a dependency exemption deduction for JT, provided JT's taxpayer identification number, reported wages of $28,775, and claimed a standard deduction, an earned income credit, and a child tax credit.  These items resulted in an overpayment of $3,066, of which $516 pertained to the earned income credit.

Respondent, in a notice of deficiency, changed petitioner's filing status to single and disallowed the dependency exemption deduction for JT, the earned income tax credit, and the child tax credit.

After receipt of the notice of deficiency petitioner met with respondent's representative, who told petitioner to provide a letter from JT's mother confirming that JT lived with petitioner during 2006.  Subsequently, petitioner obtained and mailed to respondent a signed and notarized letter dated January 9, 2008, from Ms. Tigue stating that she allowed JT to live with petitioner for 2006.  After reviewing the notarized letter respondent issued a notice dated September 8, 2008, stating that:  (1) Petitioner was recertified for the earned income credit (EIC) for 2006; (2) in the future petitioner would not have to complete Form 8862, Information To Claim Earned Income Credit After Disallowance; and (3) petitioner

would receive her 2006 EIC refund within 6 weeks.  On or about October 31, 2008, petitioner received a refund check for $2,367, reflecting her entire overpayment for 2006, less an amount she owed for 2005.

## Discussion

### I.  Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a) the burden may shift to the Commissioner regarding factual matters if the taxpayer produces credible evidence and meets the other requirements of the section. Petitioner does not argue that she satisfied the elements for a burden shift, but even if she did, we need not and explicitly do not decide the issue because we resolve this case on the preponderance of the evidence and not on an allocation of the burden of proof, rendering the issue of burden moot.  See Knudsen v. Commissioner, 131 T.C. __, __ (2008) (slip op. at 6-7); Cyman v. Commissioner, T.C. Memo. 2009-144.

### II.  Deductions in General

Deductions are a matter of legislative grace, and taxpayers must satisfy the statutory requirements for claiming the deductions.  See INDOPCO, Inc. v. Commissioner, 503 U.S.

79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must maintain adequate records to substantiate the amounts of credits and deductions claimed. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

A. Dependency Exemption Deduction

A taxpayer may claim a dependency exemption deduction for each individual who is a dependent (as defined in section 152) of the taxpayer for the year. Sec. 151(a), (c). The definition of the term "dependent" includes a qualifying child of the taxpayer. Sec. 152(a).

The taxpayer must establish that, pertinent here, the qualifying child satisfies the following four requirements of section 152(c)(1): (1) Bears a relationship to the taxpayer as described in section 152(c)(2); (2) has the same principal place of abode as the taxpayer for more than one-half of the taxable year; (3) meets the age requirement of section 152(c)(3); and (4) has not provided more than one-half of his or her own support for the taxable year.

JT satisfies the relationship requirement because she is the descendant of petitioner's brother; namely, his daughter. Sec. 152(c)(2)(B). JT satisfies the residency test for 2006 because JT lived in petitioner's apartment with petitioner for the entire year, as confirmed by the notarized letter from JT's mother, Ms. Tigue. JT also satisfies the age requirement

because JT reached age 12 in 2006 and was therefore under age 19 at the close of the taxable year.  Sec. 152(c)(3)(A)(i).

With respect to the remaining test, whether JT provided more than one-half of her own support in 2006, we observe that JT reached age 12 in 2006, was a full-time junior high school student, and had no earnings.  Thus, we find JT provided none of her own support.

Accordingly, we conclude that petitioner is entitled to a dependency exemption deduction for JT for 2006 because JT is petitioner's qualifying child within the definition of section 152(c).

B.  Earned Income Credit

Subject to certain limitations, an eligible individual is allowed a tax credit calculated as a percentage of the individual's earned income.  Sec. 32(a)(1).  Earned income includes wages.  Sec. 32(c)(2)(A)(i).  An eligible individual includes "any individual who has a qualifying child for the taxable year".  Sec. 32(c)(1)(A)(i).

We have already concluded that JT is a qualifying child of petitioner for 2006.  We also note that after petitioner submitted a notarized letter from JT's mother confirming that JT lived with petitioner during all of 2006, respondent issued a notice dated September 8, 2008, allowing petitioner the earned income credit for 2006.  Subsequently, respondent issued a refund check for 2006 including the amount for petitioner's

2006 EIC.  Accordingly, petitioner is entitled to the earned income credit for 2006 because respondent has allowed the credit and petitioner meets the requirements of section 32.

C.  Child Tax Credit

A taxpayer may claim a child tax credit for each qualifying child of the taxpayer as defined in section 152(c). Sec. 24(a), (c)(1).  Again, we have already concluded that JT is petitioner's qualifying child for purposes of the dependency exemption deduction under section 152(c).

Further, petitioner meets the other requirements for the child tax credit.  Her adjusted gross income in 2006 was below the phaseout amount of $75,000 for an individual who is not married.  See sec. 24(b)(2)(B).  Petitioner included JT's name and Social Security number on the Form 1040, U.S. Individual Income Tax Return, that petitioner filed for 2006.  See sec. 24(e).  Consequently, petitioner is entitled to the child tax credit for 2006.

D.  Head of Household Filing Status

The final issue is whether petitioner is eligible to file as a head of household for 2006.  Section 1(b) provides a favorable income tax rate for an individual filing as a head of household.  As relevant here, to qualify as a head of household a taxpayer must:  (1) Be unmarried at the end of the taxable year; (2) not be a surviving spouse; and (3) maintain as the taxpayer's home a household that constitutes for more than one-

half of the taxable year the principal place of abode of a qualifying child of the taxpayer as defined in section 152(c). Sec. 2(b)(1).

We have already held that JT is a qualifying child of petitioner with respect to section 152(c).  Furthermore, petitioner was not married at the end of 2006, was not a surviving spouse, and maintained her apartment for more than one-half of 2006 as JT's principal place of abode.  Accordingly, petitioner is entitled to file as a head of household for 2006.

To reflect the foregoing,

Decision will be entered

for petitioner.