**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2015-48

UNITED STATES TAX COURT

JOSHUA W. PINGEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13225-12S.

Filed August 10, 2015.

Joshua W. Pingel, pro se.

<u>Laurie B. Downs</u>, for respondent.

SUMMARY OPINION

PARIS, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $7,147 in petitioner's Federal income tax and a section 6662 accuracy-related penalty of $1,429.40 for 2008.

The issues for decision are whether petitioner: (1) was engaged in the activity of "travel guide writer" for profit during 2008 and (2) is liable for a section 6662 accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. The stipulated facts and facts drawn from stipulated exhibits are incorporated herein by this reference. Petitioner resided in Colorado when he filed his petition.[2]

For 10 days in 2007 petitioner vacationed in Australia. While on vacation, he decided to pursue travel as a career. In December 2007 petitioner began laying the groundwork for what he hoped would be an exciting and profitable career as a travel guide writer by organizing Virgin Backpacking, LLC (LLC), as a Colorado LLC and obtaining an employer identification number for the LLC from the Internal Revenue Service (IRS). Petitioner originally set up the LLC to be taxed

---

[2]Petitioner's trial was held at the Milwaukee, Wisconsin, trial session because he had moved to Wisconsin before trial.

as a partnership with the business purpose of Internet sales, but he later amended the LLC to a sole proprietorship. Petitioner never transferred or contributed any assets to the LLC. As of the time of trial the LLC was not current with its filings with the State of Colorado.

Petitioner's plan was to be a part of the online travel market by writing a blog[3] about his international travels. Petitioner had some backpacking experience and planned to use his knowledge to write about the niche of international, lightweight backpacking.[4] Petitioner organized the LLC to sell camping gear through affiliate sales[5] and the books petitioner planned to write about his travels. To earn income through affiliate sales, petitioner had to fill out forms for the desired product manufacturers to be allowed to provide links on his Web site to

---

[3]"Blog" is a truncation of the expression "Web log", which is a regularly updated Web site or Web page written in an informal or conversational style and typically run by an individual or small group. Oxford Dictionary, http://www.oxforddictionaries.com/us/definition/american_english/blog (last visited June 22, 2015).

[4]At trial petitioner defined "lightweight backpacking" as traveling with a backpack weighing no more than 12 pounds.

[5]"Affiliate sales" is a marketing arrangement by which an online retailer pays a commission to an external Web site for traffic or sales generated from its referrals. Oxford Dictionary, http://www.oxforddictionaries.com/us/definition/america_english/affilated-marketing (last visited June 22, 2015).

the manufacturers' Web sites. Petitioner provided no links to manufacturer Web sites on his Web site that would allow for affiliate sales.

I.      Petitioner's Travels

In early 2008 petitioner left his position as a "senior client relationship manager" at Computershare. He took a distribution of $43,891 from his Fidelity Investments section 401(k) account to finance his travels.

In June 2008 petitioner's adventure began. Over the next 5-1/2 months, petitioner made his way across the continents of Europe and Africa and even made a foray into the Middle East.

Throughout his journey petitioner updated his blog with anecdotes and pictures from his travels. While petitioner included details about some of the sites he saw, places he stayed, and food he ate, many of his explanations do not give enough details for a reader to find the specific site, lodgings, or restaurant described. For example in petitioner's Paris blog entry he states: "[W]e hit up The [sic] BEST ice cream in Europe. * * * there are a couple of places that serve it and pricing is much higher at one (the 'tourist' one as Jeff put it) than at the other one. We walked past the tourist one, which had a huge crowd and walked down the street about half a block to the other one." Petitioner does not give any more details about where in Paris the best ice cream in Europe can be found.

Petitioner did keep copies of all his receipts, flight confirmations, lodging confirmations, tour confirmations, rail passes, shuttle confirmations, bank statements, tour vouchers, credit card statements, and other miscellaneous receipts from the trip.

## II.     Petitioner's Books

Petitioner realized as he traveled, and even more so after he returned to the United States, that the market was already saturated with international backpacking blogs and that his plan for generating income through affiliate sales from his blog would not be profitable.  Petitioner then shifted his focus to writing books about his travels and the insights he gained while traveling.

Petitioner has written three books since returning from his travels.  The first book centers on petitioner's time in Africa and his journey from Cape Town, South Africa, to Nairobi, Kenya.  Petitioner's plan was to sell this book for the price of $14.99 per book.  There is no evidence in the record as to how petitioner arrived at this price.  He has revised the book over the years and stated its purpose is to be informative about places to visit, stay, and eat, along with his personal thoughts and experiences.

Petitioner's second book is entitled Road to the World: A 19 Day Q&A to Get You on Track for Personal and Professional Success.[6]  Petitioner began writing this book in 2011.  Although petitioner wrote about his travels that "[m]any lessons were learned and now he is sharing some of those lessons with you in this book", he referenced his travels in only 1 of the 19 chapters of the book.

As of the date of trial, petitioner's third book was still in production.  It is a book of his Africa photos that include inspirational sayings with each photo. Petitioner paid an independent self-publishing Web site $26 to publish a test copy of this book.

As of the date of trial, none of the books had been published or were subject to publisher commitments to publish, nor could petitioner estimate when the books would be published.  Petitioner planned to self-publish his books, not to obtain a publishing contract.  Outside of speaking with family, friends, co-workers, and other travelers, petitioner did not know what the potential demand for or interest in

---

[6]Petitioner wrote his second book under the pen name Rayland Crowder, which is a combination of the first and last names, respectively, of the two main characters on the television show "Justified".  Petitioner did not research whether there were any copyright limitations on using the characters' names.

these books would be.  As of the date of trial, petitioner had not earned any income from his books.

III.    Back in the USA

In early 2009, in addition to his efforts to develop his writing and marketing after his trip, petitioner contacted a former client and obtained employment in Texas to finance petitioner's product development courses and provide for basic necessities.  During this time petitioner was not able to update his blog or publish his books because he was working in excess of 14 hours a day.  Petitioner held this job until March 31, 2011.

To increase his knowledge and understanding of the world of travel writing, petitioner began corresponding with a travel blog expert in 2010.  Petitioner enrolled in this expert's travel writing courses, and he enrolled in other specialized courses in the areas of marketing, product creation, and sales generation over the next few years.

In 2010 petitioner accidentally deleted his blog while making revisions.  As of the date of trial, petitioner's blog had not been reposted, and he had received no income from his blog.

Petitioner timely filed his 2008 Federal income tax return (return).  He listed "world travel guide" as his principal business on the Schedule C, Profit or Loss

From Business, attached to the return. On the Schedule C, petitioner did not report any business gross receipts or gross income. He claimed total expenses of and reported a net business loss of $39,138. As part of his net business loss, petitioner claimed deductions for travel expenses of $19,347, deductible meals and entertainment expenses of $6,314, and other expenses of $5,431.

Petitioner reported wages of $29,299, taxable interest of $52, ordinary dividends of $3, and a pensions and annuities distribution of $43,891, for total income of $73,190 for 2008. Petitioner reduced his total income to $34,107 by reporting a Schedule C business loss of $39,138.

Respondent issued petitioner a notice of deficiency for 2008 dated March 13, 2012, wherein he disallowed in full petitioner's deductions for travel, deductible meals and entertainment, and other expenses and determined a deficiency of $7,147 and a section 6662 accuracy-related penalty of $1,429.40.[7] Respondent's determination for all of the disallowed expenses was that petitioner had not "established that you incurred, or if incurred, paid this amount during the taxable year for ordinary and necessary business purposes".

---

[7]Respondent also reduced the amount of petitioner's deduction for student loan interest. That determination was computational and will be not discussed further.

IV.    Procedural History of Petitioner's Case

On May 24, 2012, petitioner timely filed a petition with the Court. Petitioner states in his petition that "[t]he IRS determined that I did not have a business; rather a hobby.  My Sch C was truly a business and not a hobby." Petitioner goes on to aver that he:  (1) "acted in a business like [sic] manner", (2) had "a profit motive", and (3) did "not have profitable years yet because I have not completed the trail guide book."  Petitioner also states:  "There is not a pleasure motive as backpacking is extremely difficult work."

Respondent's answer denies that he questioned whether petitioner's activity was a business or a hobby and reiterates that his determination was that petitioner's deductions were disallowed because they were not "incurred and paid for ordinary and necessary business purposes."  Respondent also denies that petitioner had the intent to operate a business and that petitioner had a profit motive.

Respondent then changed course in his pretrial memorandum.  The only issues listed for trial in the pretrial memorandum are whether petitioner:  (1) was engaged in an activity for profit under section 183 and (2) was liable for an accuracy-related penalty under section 6662.  Petitioner did not file a pretrial memorandum.

Respondent did not file an amended or supplemental answer to assert an increased deficiency under his new theory that petitioner was not engaged in an activity for profit under section 183.[8]

## Discussion

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving it incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer bears the burden of proving his entitlement to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

## I.    Burden of Proof

Under section 7491(a) the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements.

Additionally, respondent bears the burden of proof for any new matter that departs from the determination in the notice of deficiency. See Rule 142(a);

---

[8]Respondent allowed petitioner's 2008 Schedule C deductions for depreciation expenses of $5,128; legal and professional expenses of $550; office expenses of $1,728; and supply expenses of $640 for the same activity. Under respondent's new theory, his determination should have been that all of petitioner's deductions should be disallowed.

Dagres v. Commissioner, 136 T.C. 263, 277-278 (2011); see also Papineau v.

Commissioner, 28 T.C. 54, 57 (1957).  New matter includes a new theory that

"'alters the original deficiency or requires the presentation of different evidence.'"

Dagres v. Commissioner, 136 T.C. at 278 (quoting Wayne Bolt & Nut Co. v.

Commissioner, 93 T.C. 500, 507 (1989)); Estate of Falese v. Commissioner, 58

T.C. 895, 898-899 (1972); Papineau v. Commissioner, 28 T.C. at 57; Tauber v.

Commissioner, 24 T.C. 179, 185 (1955).

The Court need not determine which party bears the burden of proof

because the case will be decided on the preponderance of the evidence.  See

Knudsen v. Commissioner, 131 T.C. 185 (2008), supplementing T.C. Memo.

2007-340; Cyman v. Commissioner, T.C. Memo. 2009-144.

II.     Section 183[9]

    A.      General Law

    Generally, the Internal Revenue Code allows deductions for ordinary and

necessary expenses incurred in conducting a trade or business or for the

production of income.  Secs. 162(a), 212(1).  To determine whether and to what

extent section 183 and the regulations thereunder apply, the activity of the

taxpayer must be ascertained.  Sec. 1.183-1(d), Income Tax Regs.  Under section

183, if an activity is not engaged in for profit, then no deduction attributable to

that activity is allowed except as provided for in section 183(b).  The phrase

"activity not engaged in for profit" means any activity other than one with respect

to which deductions are allowed for the taxable year under section 162 or under

paragraph (1) or (2) of section 212.  Sec. 183(c).  "Profit" for purposes of section

183(a) means economic profit, independent of tax savings.  See Antonides v.

---

[9]Generally, the Court's concerns surrounding new theories are surprise or
prejudice to either party.  Both parties were aware that sec. 183 would be the main
issue at trial, and all of the exhibits referenced at trial were joint exhibits.  See
Bhattacharyya v. Commissioner, T.C. Memo. 2007-19, 2007 WL 247821, at *6
(both parties relied on the same exhibits at trial and the taxpayer was aware before
trial of new issues the Commissioner planned to raise).  When the Court asked
petitioner whether the issues set forth in respondent's pretrial memorandum were
the issues for trial, he responded in the affirmative.

Commissioner, 91 T.C. 686, 694 (1988), aff'd, 893 F.2d 656 (4th Cir. 1990);

Hulter v. Commissioner, 91 T.C. 371, 393 (1988).

The standard to decide whether a taxpayer is carrying on a trade or business

so that his expenses are deductible under section 162 is to examine whether the

taxpayer's primary purpose and intention in engaging in the activity is to make a

profit. Dreicer v. Commissioner, 78 T.C. 642, 643 (1982), aff'd without published

opinion, 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer's expectation of profit

need not be a reasonable one, but merely bona fide. Id.; sec. 1.183-2(a), Income

Tax Regs. Whether a taxpayer expects to realize a profit is a question of fact and

is resolved by examining all of the facts and circumstances of the case. Dreicer v.

Commissioner, 78 T.C. at 643-644; sec. 1.183-2(a), Income Tax Regs.

The Court examines the facts and circumstances of the case using the

relevant factors in section 1.183-2(b), Income Tax Regs. Dreicer v.

Commissioner, 78 T.C. at 644. Such factors include: (1) the manner in which the

taxpayer carries on the activity, (2) the expertise of the taxpayer or his advisors,

(3) the time and effort expended by the taxpayer in carrying on the activity, (4) the

expectation that assets used in the activity may appreciate in value, (5) the success

of the taxpayer in carrying on other similar or dissimilar activities, (6) the

taxpayer's history of income or losses with respect to the activity, (7) the amount

of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs. No one factor is determinative. Id. Simple numerical majority will not indicate a lack of profit motive or vice versa, and the Court may accord certain factors greater weight than others. Id.; see also Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); Allen v. Commissioner, 72 T.C. 28, 34 (1979). Each of these factors will be analyzed in turn, and the Court will give greater weight to the objective factors listed above. See Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. at 645; see also sec. 1.183-2(a), Income Tax Regs.

B.   Petitioner's Pursuits as an International Travel Guide Writer

Petitioner listed world travel guide[10] (activity) as his principal business on the Schedule C attached to the return. The Court will apply the section 183 factors to all the facts and circumstances surrounding the activity.

---

[10]Although petitioner does not use the term "writer" on the Schedule C as his profession, it is evident from the documents entered into evidence and petitioner's testimony that his intended profession was that of a travel guide writer and not merely a travel guide.

1.    Manner in Which the Activity Is Conducted

Whether petitioner carried on the activity in a businesslike manner and maintained complete and accurate books and records may indicate whether he engaged in the activity for profit. See sec. 1.183-2(b)(1), Income Tax Regs. Carrying on the activity in a manner substantially similar to that of other similar activities that are profitable and changing operating methods or adopting new techniques or abandoning unprofitable methods in a manner consistent with an intent to improve profitability may also indicate a profit motive. Id.

Before beginning his travels, petitioner formed the LLC to implement the activity. Petitioner obtained an employer identification number for the LLC, but he did not identify the LLC on the Schedule C attached to the return. Furthermore, as of the date of trial, he had not contributed or transferred any assets to the LLC, and the LLC's filings were not current with the State of Colorado.

Petitioner did not maintain any books or records for the activity. He had no written business plan and no estimate as to when his Web site would be operational, when his books would be published, or when he would begin to earn income from the activity. Although petitioner documented and retained receipts for his travel-related expenses, merely maintaining receipts is not enough to indicate a profit motive. See Golanty v. Commissioner, 72 T.C. at 430; Rowden v.

Commissioner, T.C. Memo. 2009-41, 2009 WL 415601, at \*5. There must be additional evidence showing petitioner used the receipts to "evaluate the profitability of his operations," and without more, such evidence is not persuasive of his profit motive. See Rowden v. Commissioner, 2009 WL 415601, at \*5. There is no such evidence here.

Furthermore, petitioner did not investigate the activity before embarking on his trip. Petitioner incurred over $39,000 in expenses before doing any research into the activity's profitability. This is an indication that the activity was not engaged in for profit. See McCarthy v. Commissioner, T.C. Memo. 2000-197, 2000 WL 863151, at \*4; see also Burger v. Commissioner, T.C. Memo. 1985-523, 1985 WL 15145, at \*5 (taxpayers who "undertook the activity with no concept of what their ultimate costs might be, how they might operate at the greatest cost efficiency, how much revenues they could expect, or what risks could impair the generation of revenues" did not "operate in a businesslike manner"), aff'd, 809 F.2d 355 (7th Cir. 1987). It was not until well into petitioner's travels and upon his return that petitioner investigated and determined the level of competition and degree of difficulty involved in the activity. Additionally, petitioner admitted his approach to the activity was ad hoc; he testified to using a "ready, fire, aim" method of learning from his mistakes along the way.

The Court finds that the activity was not carried on in a businesslike manner or operated in a manner similar to that of other similar activities, or that petitioner made changes to his operation methods or adopted any new techniques in the year in issue. As such, this factor weighs against petitioner in determining whether the activity was engaged in for profit.

### 2. Expertise of Petitioner or His Advisors

This factor concerns petitioner's preparation for the activity by "extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein" to indicate his profit motive. See sec. 1.183-2(b)(2), Income Tax Regs. Where such preparation was undertaken or experts consulted, but the taxpayer did "not carry on the activity in accordance with such practices," then lack of profit motive may be indicated, unless the taxpayer was "attempting to develop new or superior techniques which may result in profits from the activity." Id.

Petitioner sought out and obtained expert advice regarding the activity. Petitioner contacted noted experts in the activity; additionally, he contacted experts regarding the creation, development, and marketing of products embodied in courses he has taken. While these actions are to petitioner's credit, he did not perform them until after his trip when he determined the marketplace to be highly

competitive and already developed and in years beyond the year in issue. Petitioner failed to perform basic due diligence before embarking on his proposed course of action.  See Westerbrook v. Commissioner, T.C. Memo. 1993-634, 1993 WL 540784, at *7 ("a taxpayer need not make a formal market study" but "should undertake a basic investigation of the factors that would affect profit"), aff'd, 68 F.3d 868 (5th Cir. 1995).  Given the timeframe in which petitioner sought expert advice, the Court finds this factor weighs against petitioner's having a profit motive in 2008.

### 3.    Time and Effort Expended

Extensive time and effort devoted to an activity, "particularly if the activity does not have substantial personal or recreational aspects, may indicate an intention to derive a profit."  Sec. 1.183-2(b)(3), Income Tax Regs.  Furthermore, withdrawal from another occupation to devote time and energy towards the activity may be evidence of a profit motive.  Id.  The fact that a taxpayer devoted "a limited amount of time to an activity does not necessarily indicate a lack of profit motive where the taxpayer employs competent and qualified persons to carry on such activity."  Id.

The record reflects that petitioner devoted his time and effort to the activity in 2008 through his traveling and blog posts.  Additionally, petitioner left his job

in 2008 to have more time to pursue the activity. Although petitioner has devoted some degree of time to researching, drafting, revising, and educating himself in the finer points of blogging, marketing, and sales, most, if not all, of these tasks were undertaken in years not in issue here.

Petitioner admitted that since 2008 he has not done much writing. Petitioner testified that the employment he obtained upon his return to the States did keep him from writing for the next couple of years. "[T]here must be some conscientious intent and effort to engage in and continue in the writing field for the purpose of producing income and a livelihood in order to have writing qualify as a trade or business". Wright v. Commissioner, 31 T.C. 1264, 1267 (1959), aff'd, 274 F.2d 883 (6th Cir. 1960).[11] While petitioner did travel and write in 2008, he did no more writing for the next two years. "Carrying on a business * * * implies an occupational undertaking to which one habitually devotes time, attention, or effort with substantial regularity." Fahs v. Crawford, 161 F.2d 315, 317 (5th Cir. 1947). This factor weighs against petitioner.

---

[11]The Court understands petitioner's argument that Wright is outdated law because of technological advancements in the publishing world. While the publishing world has advanced since 1959, Wright is still good law and pertinent to the Court's discussion.

4. Expectation That Assets Used in Activity May Appreciate in Value

For the purposes of a section 183 analysis, "[t]he term 'profit' encompasses appreciation in the value of assets * * * used in the activity." Sec. 1.183-2(b)(4), Income Tax Regs. A taxpayer may realize an overall profit when appreciation in the value of assets combined with any income from the activity will exceed expenses of operation. Id.

Petitioner claimed a depreciation deduction of over $5,000 for assets not listed on the Schedule C. Petitioner credibly testified that the depreciation deduction was for his computer and photography equipment. These assets will not appreciate in value.

The only other assets referred to in the record are petitioner's original work product--the blog and books he wrote. Petitioner's blog was accidentally deleted in 2010 and as of the time of trial had yet to be reposted. Although petitioner testified about potential prices for two of the books, he has not sold any books. There is not sufficient evidence in the record to decide whether petitioner expected these assets to appreciate. Accordingly, the Court cannot conclude that this factor supports a finding of profit motive. See Shah v. Commissioner, T.C. Memo. 2015-31, at *11.

5.    The Success of the Taxpayer in Carrying On Other Similar or Dissimilar Activities

"The fact that the taxpayer has engaged in similar activities in the past and converted them from unprofitable to profitable enterprises may indicate that he is engaged in the present activity for profit, even though the activity is presently unprofitable." Sec. 1.183-2(b)(5), Income Tax Regs. Petitioner credibly testified that this was the first time he had engaged in an activity of this nature and that he was a novice entrepreneur. Therefore, this factor is neutral.

6.    The Taxpayer's History of Income and Losses With Respect to the Activity

If a taxpayer has engaged in an activity for multiple years, "a series of losses during the initial or start-up stage of an activity may not necessarily be an indication that the activity is not engaged in for profit." Id. subpara. (6). Continued sustained losses beyond the initial or startup period required to bring the activity to profitability, if not explainable as "due to customary business risks or reverses" may be indicative of the lack of profit motive. Id. However, "[a] series of years in which net income was realized would * * * be strong evidence that the activity is engaged in for profit." Id.

Petitioner began the activity in 2008, the year in issue. Petitioner claimed a business loss of $39,139 for 2008. It is not uncommon to incur losses in the first year of an activity. There is no evidence in the record, however, that future profits will cover the startup losses. See Golanty v. Commissioner, 72 T.C. at 426-427. This factor weighs against petitioner.

7.    The Amount of Occasional Profits, if Any, Which Are Earned

This factor concerns the amount of profits in relation to the losses incurred, investments made in the activity, and assets used in the activity. Sec. 1.183-2(b)(7), Income Tax Regs. The activity had no profits in 2008.

Petitioner testified that aside from attending some courses and seminars about the activity in the following years, he was not involved to the extent he had wished because of other work obligations.[12] Furthermore, the income-generating aspects of petitioner's activity--his blog and books--were not operational, published, or available for sale at the time of trial, and petitioner could not

---

[12]Petitioner filed Schedules C with his 2009 and 2010 Federal income tax returns. Petitioner listed his profession as "consulting travel guide" on both Schedules C. Petitioner reported gross receipts or sales of $49,146 for 2009 and none for 2010. A business loss was reported for each year. Petitioner testified that he had not sold any copies of his books and had no affiliated sales from his blog. It is not clear from the record what activity generated the gross receipts or sales reported for 2009.

estimate when said items would be operational or available for sale. With no estimation of or plan for profits, petitioner incurred tens of thousands of dollars of expenses. "The magnitude of the activity's losses in comparison with its revenues is an indication that petitioner did not have a profit motive with respect to the activity." Miller v. Commissioner, T.C. Memo. 1998-463, 1998 WL 906689, at *6 (citing Smith v. Commissioner, T.C. Memo. 1997-503, and Burger v. Commissioner, T.C. Memo. 1985-523). Consequently, this factor weighs against petitioner.

### 8. The Financial Status of the Taxpayer

"The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit." Sec. 1.183-2(b)(8), Income Tax Regs. Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity was not engaged in for profit especially if there were personal or recreational elements involved. Id.

In 2008 petitioner terminated his employment to pursue the activity and took a sizable distribution from his section 401(k) retirement account to finance his travels. Petitioner credibly testified that he was required to obtain other

employment when he returned from traveling to provide for basic necessities because the activity was not immediately profitable.

Petitioner did have some wage income, taxable interest, ordinary dividends, and a taxable section 401(k) distribution in 2008. The record is silent as to whether petitioner had income from any other sources, but petitioner did realize the tax benefits of the deductions generated from the activity to shelter his wage income, taxable interest, ordinary dividends, and section 401(k) distribution in 2008. This fact, coupled with the fact that there were elements of personal pleasure and recreation in the activity as discussed below, tips the balance of this factor against petitioner.

9.      Elements of Personal Pleasure or Recreation

The presence of personal motives in carrying on an activity may indicate the activity was not engaged in for profit, particularly where there are recreational or personal elements involved. Sec. 1.183-2(b)(9), Income Tax Regs. Where there are no elements of personal recreation, the inference is strong that there was a profit motive. Id. But "[a]n activity will not be treated as not engaged in for profit merely because the taxpayer has purposes or motivations other than solely to make a profit." Id. The fact that the taxpayer enjoyed the activity and derived personal

pleasure from engaging in it is not sufficient alone to cause the activity to be classified as not engaged in for profit. Id.

Petitioner did derive substantial personal pleasure and recreation from the activity and readily admitted he enjoyed traveling, regardless of any hardships suffered during his travels. In fact it was while traveling on vacation that petitioner decided to attempt to make a career out of the activity. This factor, in combination with the other factors reviewed by the Court, weighs against petitioner.

C.    Conclusion

After review of the factors and all of the facts and circumstances surrounding the activity, the Court finds that petitioner was not engaged in the activity for profit in 2008.[13]

Although from his pretrial memorandum forward in this case respondent has asserted that petitioner's activity was not engaged in for profit under section 183, no amended answer was filed asserting an increase in the deficiency. Because

---

[13]The Court understands that 2008 was the first year petitioner engaged in the activity. While the Court finds that petitioner was not engaged in the activity for profit in 2008, this finding does not mean that the activity is forever doomed to be merely a hobby. See Feistman v. Commissioner, T.C. Memo. 1982-306, aff'd without published opinion, 718 F.2d 1110 (9th Cir. 1983).

respondent has failed to follow the necessary procedural requirements to assert an increase in the deficiency, his determination is limited to the deficiency in the notice of deficiency dated March 13, 2012.

III.    Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) authorizes a 20% penalty on the portion of an underpayment of income tax attributable to:  (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax.  Under section 7491(c), the Commissioner bears the burden of production with regard to penalties.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner has met the burden of production, the taxpayer has the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447; Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), aff'g T.C. Memo. 1982-337.

There is a "substantial understatement" of income tax for any year if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000.  Sec. 6662(d)(1)(A); Higbee v. Commissioner, 116 T.C. at 448.

Here, the understatement of income tax is $7,147, which is greater than $5,000, which in turn is greater than 10% of the tax required to be shown on the return. Thus, the understatement is substantial for purposes of the section 6662(a) accuracy-related penalty. The Court concludes that respondent met his burden of production in showing that petitioner substantially understated his Federal income tax for 2008.

Pursuant to section 6664(c)(1), no penalty shall be imposed under section 6662 with regard to any portion of an underpayment if it can be shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Whether a taxpayer acted with reasonable cause and in good faith is decided on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id.; see also Remy v. Commissioner, T.C. Memo. 1997-72.

Petitioner did not address the accuracy-related penalty at trial or in his opening brief. In his answering/reply brief, petitioner devotes one paragraph to the accuracy-related penalty, merely reiterating that the activity was an active trade or business. No evidence was presented to explain petitioner's efforts to ascertain his correct tax liability for 2008 beyond his belief that the activity in which he was

engaged was a trade or business. Petitioner did not present any reasonable cause or good faith arguments.

Petitioner has not met his burden of proving that he acted in good faith and with reasonable cause, and the Court sustains the section 6662(a) accuracy-related penalty for a substantial understatement of income tax.[14]

To reflect the foregoing,

Decision will be entered

for respondent.[15]

---

[14]The notice of deficiency states that the sec. 6662 penalty was attributable to one of the following: (1) negligence or disregard of rules or regulations; (2) substantial understatement of income tax; or (3) substantial valuation misstatement (overstatement). Because the Court finds that there was a substantial understatement of income tax, a discussion of whether petitioner was negligent is not warranted. A substantial valuation misstatement is not applicable here.

[15]The Court finds that respondent is limited to his original determination in the notice of deficiency dated March 13, 2012. See supra p. 25-26.