T.C. Memo. 2016-24

UNITED STATES TAX COURT

CHARLES R. MANGUM AND ESTATE OF MARILYN MANGUM, DECEASED, CHARLES R. MANGUM, EXECUTOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1288-12L.  Filed February 16, 2016.

Sallie W. Gladney, for petitioners.

Thomas Lee Fenner and Paul Cooperman Feinberg, for respondent.

MEMORANDUM OPINION

BUCH, Judge:  This case comes before us on a petition for review of a collection determination relating to a liability for former section 6621(c) tax-

[*2] motivated transaction interest repealed for returns due after 1989.[1]  In collection review cases, section 6330(c)(2)(B) provides that taxpayers cannot challenge their underlying tax liability if they received a statutory notice of deficiency or had a prior opportunity to challenge their underlying liability. Pursuant to section 6330(d), the Mangums[2] seek review of the Internal Revenue Service's (IRS) determination that sustained the filing of a notice of Federal tax lien with respect to their 1983 tax year, and they raise various arguments disputing the underlying tax liability attributable to section 6621(c) interest.[3]  Regardless of the merits of their arguments about the underlying liability, the Mangums received prior consideration in Appeals before their collection hearing requests. Accordingly, they are statutorily barred from challenging their underlying liability, and the IRS did not abuse its discretion by sustaining the lien.

---

[1]Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub. L. No. 101-239, sec. 7721(b), 103 Stat. at 2395-2399.

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Mrs. Mangum died during this dispute with the IRS.  In this case, her estate appears through her husband as executor.  For convenience, we will refer to Mr. Mangum and his late wife or her estate collectively as "the Mangums".

[3]See sec. 6320(c).

**[\*3]**                                    Background

This case was submitted without trial under Rule 122.

Charles R. Mangum was a limited partner in Dillon Oil Technology

Partners. The Dillon Oil partnership was created ostensibly to invest in enhanced

oil recovery technology used to recover oil and natural gas.[4] Dillon Oil was

subject to the partnership audit and litigation procedures found at sections 6221

through 6233, commonly referred to as TEFRA.[5] Dillon Oil was one of the many

Elektra/Hemisphere tax shelter investment partnerships whose partnership items

were extensively litigated in Tax Court.[6] Elektra and Hemisphere refer to the

names of the entities that purportedly licensed enhanced oil recovery technology

to investment partnerships, including Dillon Oil.[7] There were over 2,000 related

---

[4]See Krause v. Commissioner, 99 T.C. 132, 133-134 (1992), aff'd sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994).

[5]TEFRA is short for the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648.

[6]See Krause v. Commissioner, 99 T.C. at 133.

[7]See Krause v. Commissioner, 99 T.C. at 140, 150, 152 (in this case the non-TEFRA partnerships leased enhanced oil recovery technology from Elektra Energy Corp., and the TEFRA partnerships leased enhanced oil recovery technology from Hemisphere Licensing Corp., the successor corporation to Elektra).

**[*4]** Elektra/Hemisphere pre-TEFRA and TEFRA partnership cases with alleged total tax deficiencies in excess of $2 billion.[8]

Mr. Mangum's flowthrough loss from Dillon Oil was $98,858 for 1983. He and his wife, Marilyn, filed a joint Form 1040, U.S. Individual Income Tax Return, and reported that loss on their Schedule E, Supplemental Income and Loss.

## I.    Dillon Oil FPAA and Tax Court Proceeding

The liability the Mangums are challenging was determined as a result of a proceeding involving Dillon Oil. The IRS examined Dillon Oil's 1983 return and issued a notice of final partnership administrative adjustment for the 1983 partnership taxable year. The IRS principally disallowed over $17 million of Dillon Oil's deductions. A petition was filed with respect to Dillon Oil and several other similarly situated partnerships, and the case was captioned Vulcan Oil Tech. Partners v. Commissioner, 110 T.C. 153 (1998), named for the lead entity. Because of the large number of Elektra/Hemisphere cases before the Tax Court, we consolidated two cases, Krause v. Commissioner and Hildebrand v.

---

[8]Krause v. Commissioner, 99 T.C. at 133.

**[*5]** Commissioner,[9] and tried them as a test case for the other Elektra/Hemisphere cases. We decided those cases in 1992, and the Court of Appeals for the Tenth Circuit affirmed in 1994. In 1998 we issued an interlocutory Opinion in the Dillon Oil proceeding holding that Krause v. Commissioner controlled and that section 6621(c) tax-motivated transaction interest applied.[10]

Congress enacted tax-motivated transaction interest under section 6621(c) into law in 1984[11] but later repealed it for returns due after 1989.[12] Tax-motivated transaction interest provided for interest at 120% of the normal rate and applied to underpayments of tax greater than $1,000 that were attributable to a tax-motivated transaction.[13]

---

[9]Krause v. Commissioner, 99 T.C. 132.

[10]Vulcan Oil Tech. Partners v. Commissioner, 110 T.C. 153, 154-155 (1998) (interlocutory Opinion in Dillon Oil proceeding), aff'd sub nom. Tucek v. Commissioner, 198 F.3d 259 (10th Cir. 1999), and aff'd sub nom. Drake Oil Tech. Partners v. Commissioner, 211 F.3d 1277 (10th Cir. 2000).

[11]Deficit Reduction Act of 1984, Pub. L. No. 98-369, sec. 144, 98 Stat. at 682 (initially codified as section 6621(d) but later changed to section 6621(c) by the Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 1511(c)(1)(A), 100 Stat. at 2744).

[12]OBRA sec. 7721(b).

[13]Sec. 6621(c) (repealed 1989).

**[*6]**  We eventually dismissed Dillon Oil's case for lack of prosecution.  The decision entered on June 13, 2002, however, is silent on whether section 6621(c) interest applies.

II.    IRS' Determination That the Mangums Owe Additional Tax Because of the Dillon Oil Decision

By letter dated February 7, 2003, the IRS notified the Mangums that they owed additional tax and interest for 1983 because of the Dillon Oil partnership-level decision.  The IRS included with this letter a Form 4549A-CG, Income Tax Examination Changes, which explained that the Mangums' income would be adjusted by $98,858 because of the Dillon Oil decision.  This adjustment resulted in a tax increase of $47,554.  The total amount due for 1983 was $364,870.99, consisting of $47,554 of tax, $215,666.93 in statutory interest pursuant to section 6601, and $101,650.06 in tax-motivated transaction interest pursuant to section 6621(c).

On May 26, 2003, the IRS assessed and billed the Mangums $358,297.60 for tax year 1983 because of the Dillon Oil proceeding, which included $47,554 in tax, $310,755.01 in interest, and an $11.41 credit to adjust a previously imposed late payment penalty.  This notice stated a lower balance due than the February 7 letter, and this lower amount is consistent with the IRS' assessment listed on Form

**[\*7]** 4340, Certificate of Assessments, Payments, and Other Specified Matters, for tax year 1983.

    A.    <u>Rejection of the Mangums' Offer-in-Compromise</u>

On November 25, 2003, the Mangums submitted an offer-in-compromise challenging their liability for the section 6621(c) tax-motivated transaction interest. They offered to pay $263,863.67 for tax year 1983 and included a check for that amount. They argued that the Court of Appeals for the Fifth Circuit in <u>Copeland v. Commissioner</u>[14] had held that the <u>Krause</u> and <u>Hildebrand</u> analysis of section 183 "was wrong as a matter of law and Elektra/Hemisphere partners who are bound by the outcome in those cases are not subject to [section] 6621(c) penalty interest."

The IRS rejected the Mangums' offer-in-compromise in October 2004 because the Court in <u>Krause v. Commissioner</u>[15] "made numerous findings of fact conclusively establishing that the Elektra/Hemisphere transactions lacked economic substance." The IRS explained this was a sufficient basis to conclude that the transactions were tax motivated because a tax-motivated transaction

---

[14]290 F.3d 326 (5th Cir. 2002), <u>aff'g in part, rev'g in part and remanding</u> T.C. Memo. 2000-181.

[15]<u>Krause v. Commissioner</u>, 99 T.C. 132.

**[*8]** includes any transaction that is a sham pursuant to section 6621(c)(3)(A)(v), and courts have held that sham transactions include those determined to have no economic substance. Further, the IRS stated that courts "can either inquire into whether there were any non-tax economic effects or use the analysis under [section] 183. The analysis is the same whether the terminology used is that of 'economic substance,' 'sham,' or section 183." The IRS concluded that the Mangums were liable for section 6621(c) tax-motivated transaction interest.

B. Appeals' Rejection of the Mangums' Offer-in-Compromise

On November 24, 2004, the Mangums appealed the IRS' decision to reject their offer-in-compromise. The assigned Appeals officer notified the Mangums' attorney that she was waiting for the IRS Office of Chief Counsel to advise her on the section 6621(c) determination.

Ultimately, the Appeals officer sustained the rejection of the Mangums' offer-in-compromise. The Appeals officer left a message with the Mangums' attorney that she would be sustaining the rejection of the Mangums' offer. The Appeals officer then spoke with the Mangums' attorney by phone on February 28, 2007, explaining that she would sustain the rejection of the Mangums' offer. That same day, the Mangums' attorney faxed the Appeals officer a copy of a notice of intent to levy issued for 1983 that the Mangums had recently received, stating that

[*9] her "help to get this stayed until the offer is officially rejected would be greatly appreciated." The Appeals officer ultimately sustained the rejection of the offer.

Later in 2007 Mrs. Mangum passed away, and Mr. Mangum was appointed executor of her estate.

III.    IRS Notice of Intent To Levy to the Mangums

The IRS sent the Mangums a Final Notice of Intent to Levy and Notice of Your Right to a Hearing dated January 14, 2010. This notice was for tax year 1983 and showed a $90,913.17 balance due, as well as a late payment penalty of $2,689.33.

The Mangums submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, marking "Offer in Compromise" as a collection alternative, which the IRS received on February 8, 2010. In it they argued that "[n]umerous courts have held that IRS imposition of the [section] 6621(c) penalty interest rate based on the Vulcan Oil Tax Court decision is improper as a matter of law" and "the IRS erred in rejecting * * * [their] offer-in-compromise."

By letter dated May 24, 2010, the IRS rejected the Mangums' collection due process or equivalent hearing request. The IRS explained that the Mangums' request was not timely because their Form 12153 was received more than one year

[*10] after the IRS sent a notice of intent to levy to the Mangums on October 8, 2003. However, the IRS' administrative file for the Mangums does not contain any information from certified mail lists for any mailings between May 2002 and October 2007.

The IRS sent Mr. Mangum a Form 8519, Taxpayer's Copy of Notice of Levy, that was dated July 1, 2010, and explained that the IRS had levied on his Wells Fargo bank account. The Mangums requested a stay on activity because the IRS has not issued a formal notice of determination. Neither this notice nor any that the IRS issued to the Mangums as of July 1, 2010, are before the Court.

IV.     IRS Notice of Federal Tax Lien to the Mangums

The IRS sent the Mangums a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, on October 12, 2010. The letter was for tax year 1983 for a $90,913.17 lien and stated the assessment date was March 16, 1987.

On November 3, 2010, the Mangums submitted a new Form 12153, marking "Offer in Compromise" as a collection alternative. The Mangums again challenged the section 6621(c), tax-motivated transaction interest.

A settlement officer who had had no prior involvement with the unpaid liability at issue was assigned the case. He determined that the Mangums could

[*11] not challenge the underlying liability attributable to the section 6621(c) interest because they had been given a prior opportunity to challenge it. He explained this in a letter he sent June 10, 2011, and he scheduled a collection due process hearing for July 12, 2011. The settlement officer met with the Mangums' attorney on July 12, 2011, and he reiterated that the Mangums could not challenge the underlying liability because the Appeals officer had sustained the rejection of the Mangums' offer-in-compromise based on doubt as to liability. The Mangums' attorney told the settlement officer that the Mangums never received a closing letter from Appeals and wished to file another offer-in-compromise. The Mangums submitted an offer-in-compromise based on doubt as to liability for 1983 offering $100, which the IRS received on November 1, 2011.

On December 15, 2011, the IRS sent the Mangums a notice of determination sustaining the lien for tax year 1983. The IRS explained in this determination letter that the Mangums could not challenge the section 6621(c) interest because they had had a prior opportunity to challenge it when the Appeals officer considered their offer-in-compromise. The IRS further explained that it would file an amended notice of Federal tax lien to correct the assessment date on the original filing, which it did on December 22, 2011. Mr. Mangum, while residing

**[*12]** in Texas, timely petitioned in response to this notice of determination, which sustained the lien for him and for his wife's estate.

The parties moved to submit the case fully stipulated under Rule 122 and filed a stipulation of facts with exhibits. The Court granted their request.

Discussion

This case comes before us on a petition for review of the IRS' determination sustaining the lien for the 1983 tax year. The Mangums assert that the underlying liability attributable to the section 6621(c) tax-motivated transaction interest is in error. The IRS argues that the Mangums are barred from challenging the underlying liability in this proceeding because of their prior opportunity to challenge the underlying liability with Appeals.[16]

I.      Former Section 6621(c) Tax-Motivated Transaction Interest

The IRS assessed section 6621(c) tax-motivated transaction interest on the Mangums' 1983 underpayment, which stemmed from the Dillon Oil partnership proceeding. Former section 6621(c) applied to substantial underpayments

---

[16]The IRS also argues that the Mangums are barred from challenging the underlying liability because they had a prior opportunity to participate in the partnership-level proceeding under section 6226(c). Because we find that the Mangums had a prior opportunity to challenge their underlying liability with Appeals, we do not need to address this additional partnership-level participation argument.

[*13] attributable to tax-motivated transactions and increased the rate of interest on those underpayments to 120% of the standard underpayment interest rate found in section 6621(a)(2).[17] For this section, the Code defined a substantial underpayment as an underpayment greater than $1,000.[18] Tax-motivated transactions included among other things "any sham or fraudulent transaction."[19] Further, Congress expressly provided that the Secretary could promulgate regulations to specify which transactions would be considered tax motivated.[20]

II.     Collection Due Process Overview and Our Review of IRS' Determination

The Secretary must notify taxpayers in writing of their right to request a hearing upon the filing of a notice of lien.[21] These hearings are often called collection due process, or CDP, hearings.[22] In a CDP hearing taxpayers may raise any issue that is relevant to an unpaid tax or a collection action, including

---

[17]Sec. 6621(c)(1) (repealed 1989).

[18]Sec. 6621(c)(2) (repealed 1989).

[19]Sec. 6621(c)(3)(A)(v) (repealed 1989).

[20]Sec. 6621(c)(3)(B) (repealed 1989).

[21]Sec. 6320(a).

[22]Sec. 6320(b) and (c).

**[\*14]** appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives.[23]

### A.    Underlying Liability Challenges

Taxpayers may challenge the existence or amount of the underlying tax liability in their CDP hearing if they did not receive a statutory notice of deficiency or did not otherwise have the opportunity to dispute the liability.[24] While the term "underlying liability" is not defined in section 6320 or 6330, we have interpreted this term "to include any amounts owed by a taxpayer pursuant to the tax laws."[25]  Further, we have previously upheld regulations promulgated by the Secretary that define a prior opportunity to dispute the underlying liability to

---

[23]Sec. 6330(c)(2)(A).

[24]Sec. 6330(c)(2)(B).

[25]Katz v. Commissioner, 115 T.C. 329, 339 (2000).

**[\*15]** include a prior "opportunity for a conference with Appeals".[26] Section

301.6320-1(e)(3), Q&A-E2, Proced. & Admin. Regs., provides:

> Q-E2. When is a taxpayer entitled to challenge the existence or amount of the tax liability specified in the CDP Notice?
>
> A-E2. A taxpayer is entitled to challenge the existence or amount of the underlying liability for any tax period specified on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute such liability. Receipt of a statutory notice of deficiency for this purpose means receipt in time to petition the Tax Court for a redetermination of the deficiency determined in the notice of deficiency. An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability. An opportunity for a conference with Appeals prior to the assessment of a tax subject to deficiency procedures is not a prior opportunity for this purpose.

Although petitioners argue that Lewis v. Commissioner, 128 T.C. 48 (2007), was

incorrectly decided, we are bound by our Court's precedent.[27]

---

[26]Lewis v. Commissioner, 128 T.C. 48, 61 (2007) (holding that because "Congress also intended to preclude taxpayers who were previously afforded a conference with the Appeals Office from raising the underlying liabilities again in a collection review hearing and before this Court", sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., is valid as a reasonable interpretation of section 6330(c)(2)(B)); see also Hassel Family Chiropractic, DC, PC v. Commissioner, 368 F. App'x 695 (8th Cir. 2010), aff'g T.C. Memo. 2009-127; Totten v. United States, 298 F. App'x 579 (9th Cir. 2008); Mason v. Commissioner, 132 T.C. 301, 319 (2009); Perkins v. Commissioner, 129 T.C. 58, 63 (2007).

[27]See Sec. State Bank v. Commissioner, 111 T.C. 210, 213 (1998) ("The

(continued...)

**[*16]** The record in this case is clear that the Mangums had a prior opportunity to challenge their underlying liability. No one disputes that the Mangums had prior consideration of their arguments related to their underlying tax liability in Appeals before their CDP hearing requests. As a result, we are precluded from considering the issues they raise.

Because the Mangums had a prior opportunity with Appeals to challenge their underlying liability, they are statutorily barred from challenging the existence or amount of that liability in this proceeding.[28] Currently the Mangums' only forum to challenge their tax would be to pay the underlying liability and sue for a refund.[29]

---

[27](...continued)
doctrine of stare decisis generally requires that we follow the holding of a previously decided case, absent special justification."), aff'd, 214 F.3d 1254 (10th Cir. 2000).

[28]Sec. 6330(c)(2)(B), (d); Behling v. Commissioner, 118 T.C. 572, 579 (2002).

[29]See secs. 7422, 6511(a).

**[\*17]** B.    Abuse of Discretion Review of IRS' Determination

Because the validity of the underlying liability is not properly at issue, we review the IRS' determination for abuse of discretion.[30]  An abuse of discretion will be found where the determination was "arbitrary, capricious, or without sound basis in fact or law."[31]

The IRS must take into consideration:  (1) the verification that the requirements of any applicable law or administrative procedure have been met; (2) issues raised by the taxpayer; and (3) whether any proposed collection action balances the need for efficient collection with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.[32]  The settlement officer properly based his determination on these factors.

First, the settlement officer verified that the requirements of applicable law and administrative procedure were met.  The Federal Government obtains a lien against "all property and rights to property, whether real or personal" of any

---

[30]See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000).

[31]Giamelli v. Commissioner, 129 T.C. 107, 111 (2007).

[32]Sec. 6330(c).

[*18] person liable for Federal taxes upon demand for payment and failure to pay.[33] The Secretary has the discretion to withdraw the notice of lien if certain circumstances are present, such as the filing of the notice was premature, the taxpayer entered into an agreement to satisfy the liability, withdrawal would facilitate collection, or with the consent of the National Taxpayer Advocate, withdrawal would be in the best interests of the taxpayer.[34] The settlement officer determined that none of the permissive circumstances for lien notice withdrawal were present. He further determined that the IRS had sent the Mangums a bill for the 1983 tax that had not been fully paid. Finally, although he determined that the assessment date listed on the notice of Federal tax lien was incorrect, he explained that this was a "non-fatal procedural error that * * * [would] be corrected with the filing of an amended tax lien." The IRS filed an amended tax lien notice and notified Mr. Mangum.[35] Further, the original notice of Federal tax lien, albeit with

---

[33]Sec. 6321.

[34]Sec. 6323(j).

[35]See Cyman v. Commissioner, T.C. Memo. 2009-144, 2009 WL 1748863, at *2, n.5 ("The notice of lien states incorrect assessment dates, but that error does not invalidate the notice of Federal tax lien.").

**[*19]** an incorrect assessment date, was sufficient to give the Mangums notice as required under section 6320.[36]

Second, the settlement officer considered the only issue raised by the Mangums. The Mangums submitted an offer-in-compromise as a collection alternative, arguing that the portion of their liability attributable to the section 6621(c) tax-motivated transaction interest was in error. The settlement officer investigated IRS' records for the Mangums. He determined the Mangums were precluded from challenging their underlying liability because they had a prior opportunity to raise this issue with Appeals, which had sustained the rejection of their offer-in-compromise.

Third, the settlement officer determined that upholding the lien balanced the Government's need for efficient collection of tax with the Mangums' concerns that the collection action be no more intrusive than necessary.

---

[36]Sage v. United States, 908 F.2d 18, 22 (5th Cir. 1990) (holding that a notice of assessment that contained a technical error is still "valid where the taxpayer has not been misled by the error" and had actual notice of the conduct that was at issue); cf. Sanderling, Inc. v. Commissioner, 571 F.2d 174, 176 (3d Cir. 1978) ("A notice of a deficiency, even if it contains error, may nonetheless be valid where the taxpayer has not been misled as to the proper year involved or the amounts in controversy."), aff'g in part 66 T.C. 743 (1976) and 67 T.C. 176 (1976).

**[\*20]** Accordingly, the settlement officer did not abuse his discretion when he sustained the lien.

III.     Conclusion

The Mangums had a prior opportunity to challenge the underlying liability attributable to the section 6621(c) tax-motivated transaction interest, and they cannot further challenge their underlying liability here.  Accordingly, our review of the IRS' determination is limited, and we find that the IRS did not abuse its discretion in sustaining the lien.

To reflect the foregoing,

Decision will be entered for respondent.