153 T.C. No. 2

UNITED STATES TAX COURT

GWENDOLYN L. KESTIN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18254-17L.                    Filed August 29, 2019.

After correctly reporting her 2014 wages as taxable income on Form 1040, "U.S. Individual Income Tax Return", P submitted to the IRS a frivolous amended return on Form 1040X, "Amended U.S. Individual Income Tax Return", on which she reported a zero tax liability and claimed the refund of all of the tax she had paid by withholding from her wages. The IRS sent to P a Letter 3176C, stating that the position on her amended return was frivolous and inviting her to avoid a penalty under I.R.C. sec. 6702(a)(1) for "fil[ing]" a frivolous return by correcting her frivolous filing. P did not comply. When the IRS did not allow the refund, she sent the IRS six letters, to each of which a photocopy of the Form 1040X was attached. In each of those six instances, the photocopy was clearly marked as a "copy", and the IRS understood that the copies were not new original claims for refund. The IRS assessed against P seven $5,000 penalties (i.e., one each for the original Form 1040X and the six photocopies) under I.R.C. sec. 6702(a)(1) for "fil[ing]" a frivolous return. The IRS issued to P a notice under I.R.C. sec. 6320 of its filing a "Notice of Federal Tax Lien" ("NFTL") under I.R.C.

sec. 6323, and P requested a "collection due process" hearing before IRS Appeals. Appeals issued a notice of determination sustaining the penalties and the NFTL filing, and P filed her petition in this Court.

Held: P is liable under I.R.C. sec. 6702(a)(1) for the $5,000 penalty for the filing of her frivolous amended return.

Held, further, P's inclusion of copies of her original Form 1040X as attachments to letters or notices asking the IRS to process and honor her original Form 1040X did not constitute "fil[ing] what purports to be a return" for purposes of I.R.C. sec. 6702(a)(1), and P is not liable for the $5,000 penalties on the six photocopies.

Held, further, the IRS's Letter 3176C, inviting P to avoid that penalty by correcting her frivolous filing, was not an "initial determination" of penalty liability for purposes of I.R.C. sec. 6751(b)(1).

Held, further, R complied with the written supervisory approval requirement of I.R.C. sec. 6751(b)(1) in this case.

Held, further, the omission from the NFTL of the assessment date for two of the penalties did not render the NFTL invalid as to those assessments.

Gwendolyn L. Kestin, for herself.

Tammie A. Geier and J. Craig Young, for respondent.

GUSTAFSON, Judge:  The Office of Appeals ("Appeals") of the Internal Revenue Service ("IRS") issued to petitioner Gwendolyn L. Kestin, on July 31, 2017, a "Notice of Determination ["NOD"] Concerning Collection Action(s) Under Section 6320 and/or 6330 of the Internal Revenue Code" pursuant to sections 6320(c) and 6330(c)(3).[1]  The NOD sustained the filing of a notice of Federal tax lien ("NFTL") to collect seven $5,000 penalties that the IRS had assessed against Mrs. Kestin under section 6702(a) for filing frivolous tax returns. She filed a petition in this Court to challenge that NOD.  The issues for decision are:  (1) whether she filed seven frivolous returns; (2) whether the penalties were approved in compliance with section 6751(b)(1); and (3) whether Appeals abused its discretion in sustaining the NFTL that was filed in connection with those penalties.  We hold that Mrs. Kestin filed one frivolous return (but not seven), that the penalty was approved in compliance with section 6751(b)(1), and that Appeals did not abuse its discretion in sustaining the NFTL filing as to that one penalty but that as to the other six penalties the NFTL filing cannot be sustained.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (26 U.S.C.) in effect for all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

Procedural history

The Commissioner moved for summary judgment on March 20, 2018, and Mrs. Kestin opposed the motion. By our order of May 7, 2018, we granted the Commissioner's motion in part[2] and held, on the undisputed facts, that Mrs. Kestin's 2014 amended return was frivolous. However, we denied the motion in part because the facts were not clear as to: (1) the number of frivolous returns that Mrs. Kestin filed for purposes of section 6702(a) and (2) the supervisory approval of the penalty assessments pursuant to section 6751(b)(1). We ordered that trial would proceed on those issues.

--------

[2]Rule 121(c) provides:

> If, on motion under this Rule, decision is not rendered upon the whole case or for all the relief asked and a trial is necessary, the Court may ascertain, by examining the pleadings and the evidence before it and by interrogating counsel, what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It may thereupon make an order specifying the facts that appear to be without substantial controversy, including the extent to which the relief sought is not in controversy, and directing such further proceedings in the case as are just. * * *

Our order of May 7, 2018, set out the material facts that exist without controversy in this case, which the Commissioner was not obliged to re-prove at trial, and those facts are included here with the findings of fact made after trial on the basis of trial evidence.

The case was tried on May 21, 2018, in Winston-Salem, North Carolina, pursuant to notice served on December 21, 2017, and confirmed by notice served on April 6, 2018, and by our orders of May 7 and May 18, 2018. Mrs. Kestin did not appear for trial. The Commissioner acknowledged that he generally bears the burden of production pursuant to section 7491(c) and the burden of proof pursuant to section 6703(a) (discussed below), and notwithstanding Mrs. Kestin's absence he called witnesses and offered other evidence. Thereafter both parties filed post-trial briefs.

## FINDINGS OF FACT

### Original return

In 2014 Mrs. Kestin received wages of $155,702 from which Federal income tax was withheld. With her husband she timely filed in April 2015 an apparently unremarkable tax return for 2014 on Form 1040, "U.S. Individual Income Tax Return", which reported a tax liability arising principally from her wages.

### Amended return

However, in September 2015 Mr. and Mrs. Kestin submitted to the IRS a frivolous amended return--a Form 1040X, "Amended U.S. Individual Income Tax Return"--that reported a zero tax liability. Two one-page letters, one from each of

the Kestins, accompanied a single original Form 1040X.  Part III of the form ("Explanation of changes") states, "See supporting letters for Mr. and Mrs. Kestin", and Mrs. Kestin's letter states:  "I am a private sector citizen (non-federal employee [sic] and employed by a private sector company (non-federal entity) as defined in 3401 (c) (d).  I am not employed in a 'trade' or 'business' nor am I an 'officer of a corporation,' nor do I hold a public office.  Therefore I did not receive privileged, taxable 'wages'."  The Form 1040X sought a refund of all of Mrs. Kestin's withheld income tax for 2014.

The first copy of the Form 1040X

On February 3, 2016, the IRS sent the Kestins a "Letter 3176C" advising that the position reflected on the Kestins' amended return was frivolous, warning that the agency intended to assert a $5,000 penalty under section 6702 for "Frivolous Tax Positions", and giving the Kestins the opportunity to avoid that penalty by correcting their frivolous filing.  The letter stated:

> If not immediately corrected, the Internal Revenue Service will assess a $5,000 penalty against you. * * * As stated above, we are proposing to assess a $5,000 penalty against you for each frivolous tax return or purported tax return that you filed. * * * If you send us corrected returns, we will disregard the previous documents that you filed and not assess the frivolous return penalty * * *.  [Emphasis added.]

The Kestins responded with a letter that argued against the IRS's position and listed, as an attachment, "Reference copy of previously-submitted tax return (1040x * * *[).]"  The IRS received the letter and attachment in March 2016.  The attached photocopy of the Form 1040X bears a large stamp at the bottom reading "photocopy - do not process".

The first penalty assessment

IRS tax examiner Tondi McNeeley prepared a Form 8278, "Assessment and Abatement of Miscellaneous Civil Penalties", dated March 18, 2016, that initially proposed assessment of a single $5,000 penalty for the original Form 1040X.  The Form 8278 was modified by handwriting to impose two penalties, totaling $10,000, the second of which was for the copy of the Form 1040X that the Kestins submitted with their letter dated February 16, 2016.

Mrs. McNeeley's immediate supervisor at that time, Rochelle Nichols, signed and dated the Form 8278 on April 7, 2016.

Penalties totaling $10,000 (as proposed March 18 and approved April 7, 2016) were assessed on May 2, 2016.

Five more copies of the Form 1040X

The Kestins sent a letter to the IRS in Kansas City, Missouri, dated and signed on November 30, 2015, but evidently received by the IRS on August 17, 2016,[3] that enclosed another copy of the Form 1040X. The letter stated that the IRS had "delayed the return of our property long enough. We have been trying to correct an erroneous filing (our original joint 2014 tax filing) but you are refusing for reasons we cannot understand. Attached find a COPY of our amended 2014 return".

The Kestins sent another letter to the IRS in Kansas City dated and signed on December 21, 2015, but received by the IRS on August 17, 2016, that enclosed, among other documents, a copy of the Form 1040X. The letter stated: "A copy of our return is included for your convenience. NOTE: Signatures are with original 1040X and notarized testimony."

The Kestins sent to the IRS in Andover, Massachusetts, a "notice" dated March 29, 2016, but received by the IRS on August 17, 2016, that enclosed a copy

---

[3]The Commissioner cites his records to show that the third, fourth, fifth, and sixth of Mrs. Kestin's submissions, though dated in November 2015, December 2015, March 2016, and May 2016, were all received by the IRS on the same day (August 17, 2016) and three of them in the same location (Kansas City, Missouri). Mrs. Kestin does not dispute these assertions but rather, in her post-trial brief, "admits that the times, dates, and actions described in R's Statement of Facts, ¶¶ 1 through 50 of his Seriatim Opening Brief * * * are generally accurate."

of the Form 1040X. The "notice" demanded that the IRS immediately process the Form 1040X and "immediately return our property that was erroneously withheld due to bad payer W-2 data and withholdings". At the bottom of the notice there appears the handwritten statement: "Attached is a copy of previous correspondence and our amended return."

The Kestins sent to the IRS in Kansas City another "notice", this one dated May 10, 2016, but received by the IRS on August 17, 2016, that enclosed, among other documents, a copy of the Form 1040X. The notice stated: "Enclosed please find copies of our original return for your convenience: 1040X * * * supporting our position to compel to process our return." The Form 1040X bears a large stamp at the bottom reading "photocopy - do not process".

The Kestins sent to three locations--the Secretary of the Department of the Treasury, in Washington, D.C., the IRS in Kansas City and the IRS in Austin, Texas--an "Affidavit of Redress Demand", signed and notarized on June 17, 2016, that enclosed a copy of the Form 1040X. The IRS received the affidavit in Austin on June 23, 2016. The affidavit included a timeline of the various filings and continued to dispute the IRS's determination that the amended return was a frivolous submission. The affidavit again demanded a return of "our property" and the reversal of the civil penalty assessments.

Second penalty assessment

Ms. McNeeley submitted on August 24, 2016, a second Form 8278 that proposed assessment of five more $5,000 penalties, totaling $25,000, for the Kestins' five additional submissions that included copies of the Form 1040X. Ms. McNeeley's immediate supervisor at that time, Andrea Ipson, signed and dated the Form 8278 on August 24, 2016.

Penalties totaling $25,000 (as proposed and approved August 24, 2016) were assessed on September 19, 2016.

The nature of Mrs. Kestin's submissions

Mrs. Kestin's September 2015 amended return on Form 1040X purported to be a tax return, was intended by her as a tax return, sought a refund, and was understood by the IRS to be a tax return. However, each of the photocopies of that Form 1040X that Mrs. Kestin included in her subsequent letters (some of which she called "notices" and one of which she called an "affidavit") was expressly stated to be a "copy" of that original Form 1040X. Each was manifestly intended by her to be perceived as a photocopy of the Form 1040X, and the IRS did perceive each as a copy of an original. Mrs. Kestin sought only one refund of the income tax she had reported on her original (non-frivolous) Form 1040 return, not seven refunds of that amount. (The refund she requested on her Form 1040X (and

all of its copies) was $27,624, but in some of her letters she stated a lesser amount--$25,986.)

CDP hearing

To facilitate its collection of the frivolous return penalties assessed against Mrs. Kestin, the IRS filed an NFTL with the Clerk of the Superior Court of Mecklenburg County, North Carolina, pursuant to section 6323. The NFTL stated the "Date of Assessment" as "09/19/2016" (i.e., the date of the second of the two assessments) and stated an amount due of $33,842. (The stated balance due was not the full $35,000 because the IRS had credited another year's income tax overpayment against the penalty liabilities.) The IRS's transcript for these liabilities shows that, on that same date, the IRS sent Mrs. Kestin a "Statutory Notice of Balance Due".

On February 7, 2017, the Commissioner sent to Mrs. Kestin, pursuant to section 6320, a "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320",[4] advising her of her right to an agency-level "collection due

_____

[4]The "Notice of Federal Tax Lien" that the IRS files pursuant to section 6323 in the manner specified in section 6323(f)(1) is the document that gives, to the world, notice of the tax debt and of the Federal Government's claimed priority to collect it from the taxpayer's property. We refer to this document as the "NFTL". It is not to be confused with the similarly named "Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320"

(continued...)

process" ("CDP") hearing. Like the NFTL, this CDP notice stated only the September 2016 assessment date but stated the full unpaid liability for all seven penalties (including the two assessed in May 2016). In response, Mrs. Kestin submitted a timely request, dated March 5, 2017, for a CDP hearing before Appeals. Her CDP hearing request stated (among other things):

> Each time the Kestins submitted rebuttals to IRS accusations or correspondences for tax year 2014 the IRS fraudulently labeled reference copies of their 2014 amended return as "frivolous" and erroneously applied fines. The record needs to be set straight. * * * If the Kestins actually filed a frivolous return (which they did not) the fine should have been $5,000 each [i.e., for each spouse], not $70,000 total!

In that CDP hearing, the IRS acknowledged that Mrs. Kestin was entitled to challenge her liability for the penalties. Mrs. Kestin advanced largely frivolous arguments, and she did not propose any collection alternative.

On July 31, 2017, Appeals issued to Mrs. Kestin an NOD. Appeals determined, inter alia, pursuant to section 6330(c)(1), "that the requirements of any applicable law or administrative procedure have been met." Appeals' determination sustained the assessment of the civil penalties and the NFTL.

---

[4](...continued)
(emphasis added) ("CDP notice"), which is the document served pursuant to section 6320(a) on the taxpayer, informing her that an NFTL has been duly filed and that she has the right to request a CDP hearing to challenge the NFTL.

Tax Court petition

On August 25, 2017, the Kestins timely mailed to this Court a petition in both their names, asking us to review Appeals' determination. The petition stated an address in North Carolina. By order of December 4, 2017, we dismissed Mr. Kestin from this case because no determination had been issued to him that could support jurisdiction in this Court.

OPINION

I.     General principles

A.     Penalties for frivolous tax submissions

The penalties at issue in this case are imposed by section 6702(a), which provides:

SEC. 6702.  Frivolous Tax Submissions.--

(a)  Civil Penalty for Frivolous Tax Returns.--A person shall pay a penalty of $5,000 if--

(1)  such person files what purports to be a return of a tax imposed by this title but which--

(A)  does not contain information on which the substantial correctness of the self-assessment may be judged, or

(B)  contains information that on its face indicates that the self-assessment is substantially incorrect, and

(2) the conduct referred to in paragraph (1)--

(A) is based on a position which the Secretary has identified as frivolous under subsection (c), or

(B) reflects a desire to delay or impede the administration of Federal tax laws. [Emphasis added.]

Subsection (b) of section 6702 (not at issue here) imposes a penalty when a frivolous position is asserted in "specified frivolous submissions", meaning requests for CDP hearings and certain other specific applications (not involved here). Subsection (b)(3) of section 6702 provides a circumstance in which the "specified frivolous submission" penalty "shall not apply":

(3) Opportunity to withdraw submission.--If the Secretary provides a person with notice that a submission is a specified frivolous submission and such person withdraws such submission within 30 days after such notice, the penalty imposed under paragraph (1) shall not apply with respect to such submission.

As to penalties (such as the section 6702(a) penalties at issue here), the Commissioner has the "burden of production" pursuant to section 7491(c); and under section 6703(a), he bears the "burden of proof" on the penalties at issue here.

The Commissioner does not dispute that section 6751(b)(1) requires special approval of the "initial determination" of section 6702 penalties, by the "immediate supervisor of the individual" who makes the initial determination of

penalty liability.  See Internal Revenue Manual ("IRM") pt. 25.25.10.8.1(6) (Aug. 13, 2015) ("Pursuant to IRC Section 6751(b), written management approval must be indicated before assessing the IRC Section 6702 penalty.  This written managerial approval should be indicated on Form 8278").  Section 6751(b)(2)(B) provides that the requirement of written supervisory approval shall not apply to a "penalty automatically calculated through electronic means"; but the Commissioner concedes that the section 6702 penalties asserted against Mrs. Kestin were not "automatically calculated".

B.    Lien principles

When a taxpayer fails to pay a tax liability after the IRS gives notice and demand pursuant to section 6303, section 6321 imposes a lien in favor of the United States on all the property of the delinquent taxpayer.  This automatic lien is sometimes referred to as a "secret lien" because it exists even before third parties could be aware of it.  See Hult v. Commissioner, T.C. Memo. 2007-302, slip op. at 12.  "However, the section 6321 lien is not valid against a purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until an NFTL has been filed.  Sec. 6323(a)."  Wadleigh v. Commissioner, 134 T.C. 280, 290 (2010).

Section 6323 authorizes the IRS to file notice of that lien--i.e., to file an NFTL.  Section 6323(f)(1) provides that the NFTL shall be publicly filed in a

place "designated by the laws of such State". The point of the NFTL is <u>not</u> to give notice to the taxpayer; the taxpayer has already received a notice of the assessment and demand for payment of the liability and is thus aware of the liability. Rather, the purpose of the NFTL is to give notice of the Government's lien to the creditors (and potential creditors) of the taxpayer and to establish the Federal tax lien's priority over the claims of other creditors.

C.    <u>CDP principles</u>

The IRS must provide to the taxpayer written notice of the NFTL within five business days of the NFTL's filing. Sec. 6320(a)(2). After receiving such a notice, the taxpayer may request an administrative hearing before Appeals. Sec. 6320(a)(3)(B), (b)(1). Administrative review is carried out by way of a hearing before Appeals pursuant to section 6320(b) and (c).

For the agency-level CDP hearing before Appeals, the pertinent procedures are set forth in section 6330(c). Those procedures require Appeals to consider four sets of issues:

First, the Appeals officer must, even without any prompting by the taxpayer, obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1); <u>see</u> <u>Hoyle v. Commissioner</u>, 131 T.C. 197 (2008), <u>supplemented by</u> 136 T.C. 463 (2011). The

NOD issued to Mrs. Kestin stated: "The Settlement Officer also confirmed the Civil Penalty was properly approved by the manager of the person recommending assessment [in compliance with section 6751(b)(1)] and is valid." We discuss below, as "verification" issues, the IRS's compliance with section 6751(b)(1) and Mrs. Kestin's allegations of errors in the NFTL and the CDP notice.

Second, a taxpayer may contest the existence and amount of the underlying tax liability if she did not have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). The Commissioner acknowledges that Mrs. Kestin did not have a prior opportunity to dispute her section 6702 penalties, so we conclude that she was entitled to challenge her underlying tax liability in the CDP hearing. We discuss her underlying liability below in part II.

Third, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax", including "challenges to the appropriateness of collection actions" and "offers of collection alternatives". Sec. 6330(c)(2)(A). Mrs. Kestin did not raise any such issues, so we need not further address them.

Fourth, at the CDP hearing, Appeals is to consider "whether any proposed collection action [here, the filing of the NFTL] balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C). An NFTL is

usually less intrusive than a levy. That is, while a levy is an affirmative act taken to collect the tax, an NFTL is a more passive action by the Government that in effect simply saves its place in line ahead of other potential claimants against the taxpayer's property. Mrs. Kestin makes no contention as to intrusiveness, and we do not address it further.

#### D.    Judicial review

When Appeals issues its determination, if the taxpayer is dissatisfied with the outcome there, she can file a petition with the Tax Court for review of Appeals' determination, as Mrs. Kestin has done. Secs. 6320(c), 6330(d)(1); see Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Where the validity of the underlying tax liability is properly at issue, we review the determination regarding the underlying tax liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

## II.    Analysis

#### A.    Frivolous return

In our order of May 7, 2018, we held that Mrs. Kestin's amended return filed September 23, 2015--asserting that her wages are not subject to income tax-- is frivolous. In our order we declined (and we still decline) to respond to her

voluminous arguments, for reasons we have explained in <u>Wnuck v. Commissioner</u>, 136 T.C. 498 (2011). In her post-trial brief, "Mrs. Kestin acknowledges that the first 1040X was frivolous and does not dispute that penalty", except with regard to procedural disputes discussed in parts II.B and II.C. Because those procedural disputes lack merit as to the original Form 1040X, we hold that she is liable for the $5,000 penalty on her Form 1040X as originally filed.

B.    <u>Photocopies as purported returns</u>

Mrs. Kestin does not dispute that her frivolous Form 1040X "purports to be a return" for purposes of section 6702(a). However, at issue in this case, in addition to the one $5,000 penalty on that original Form 1040X, are six more such penalties that the IRS assessed on the basis of her submitting, along with letters that she sent to the IRS, plainly marked photocopies of the Form 1040X. We conclude that section 6702(a) does not warrant penalties for those photocopies.

The question whether a document is a "return" under the Internal Revenue Code arises in various contexts. As we recently explained in <u>Gregory v. Commissioner</u>, 152 T.C. ___, ___ (slip op. at 7) (Mar. 13, 2019):

> Most commonly, a return is a document that is used to report a tax liability. <u>See, e.g.</u>, <u>Beard v. Commissioner</u>, 82 T.C. 766 (1984), <u>aff'd</u>, 793 F.2d 139 (6th Cir. 1986). Under what is commonly called the <u>Beard</u> test, for example, a return must meet the following criteria: "First, there must be sufficient data to calculate tax liability; second,

the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury." Id. at 777. * * *

Where a document fails to constitute a return under that definition, the document may, for example (as in Gregory), fail to establish a change in the taxpayer's last-known address, or it may (as in Law Office of John H. Eggertsen v. Commissioner, 143 T.C. 265 (2014), aff'd, 800 F.3d 758 (6th Cir. 2015)) fail to start the running of the period of limitations for assessment of tax. We most often confront the return-or-not question in such contexts, where the taxpayer contends that a document is a return and the IRS contends that it is not.

Section 6702(a) is a very different context. That statute imposes a penalty on a document that merely "purports to be a return" (the second of the Beard criteria). Thus, even if (or especially if) a document fails the other Beard criteria, the document may warrant the penalty as a "frivolous tax return". Mrs. Kestin's original Form 1040X failed the Beard test because, although it "purports to be a return", it lacks an "honest and reasonable attempt to satisfy the requirements of the tax law"; and it is therefore not a return. However, because that Form 1040X purports to be a return but has the defects set out in section 6702(a), it is subject to the section 6702(a) penalty.

But the photocopies require a different analysis. No doubt they are photocopies of a document (the Form 1040X) that purports to be a return, but the question we must answer is whether the photocopies themselves purport to be returns. She did not request action on the photocopy itself; rather, she asked the IRS to process and honor her original Form 1040X. A photocopy so marked and so explained does not "purport to be a return".

The statute does not address whether copies might be subject to the penalty, and the Commissioner points us to no pertinent regulation on the subject. The Commissioner cites no case law that addresses the question of copies labeled as such (or even of copies not labeled as such). The Commissioner does cite Grunsted v. Commissioner, 136 T.C. 455, 456-457 (2011), in which two section 6702(a) penalties for each of two years were sustained against a taxpayer who, after being told that the IRS would not accept his first purported returns, "resubmitted substantially identical purported tax returns for those two years". However, there is no suggestion in Grunsted that the later returns were mere copies or were labeled as such. On the contrary, we found in that case that the later documents were "again seeking a refund". Id. at 457. We explicitly held that "each purported to be an income tax return" and that each was "filed to obtain tax refunds". Id. at 459.

The Commissioner also cites Whitaker v. Commissioner, T.C. Memo. 2017-192, at *10, for the true proposition that "[i]f a taxpayer files multiple frivolous returns for a single year, the IRS can assess multiple frivolous return penalties"; but in Whitaker the penalties for the year at issue were sustained only as to a "Form 1040 [that] bore original signatures", id. at *3, and "what purported to be a correct Federal income tax return" that "was signed by" the taxpayer, id. at *6. In holding that such a document "purports to be a return", sec. 6702(a)(1), we explained:

> The June purported return was submitted on Form 1040, bore petitioner's and Ms. Valentine-Whitaker's original signatures, and was filed in an effort to obtain a refund. The September purported return was substantially similar to the June purported return, with original signatures but different attachments. It was filed in response to a CP72 notice that instructed petitioner to "[f]ile a corrected 2012 Form 1040 tax return within 30 days." It thus purported to be a corrected Form 1040 for 2012, and it was likewise filed in an effort to obtain a refund. [Whitaker v. Commissioner, at *12; alteration in original.]

No penalty was sustained against a mere copy in <u>Whitaker</u>.[5] The second penalized document was not labeled a copy, was not in fact a copy, was instead a signed original, and sought a refund (as opposed to merely arguing that the IRS should process a previously filed original). Mrs. Kestin's circumstance is plainly different from both <u>Grunsted</u> and <u>Whitaker</u>.

The Commissioner advises that IRM pt. 25.25.10.8(4) (Aug. 13, 2015) instructs IRS employees as follows:

> Penalties will be assessed [under section 6702(a)] without regard to whether the claim is a copy or an original, whether the signature on the claim is a copy or an original or whether there has been an IRC Section 6702 penalty previously assessed for the same tax period.

However, the IRM also advises: "If unable to determine whether the filing is an additional claim for refund (secondary filing) or a response to a Service request for a copy of a previous filing, <u>Do Not</u> assess the penalty." <u>Id.</u> pt. 25.25.10.8(5).

Moreover, although the IRM can show "the IRS's interpretation of the statute", it "does not have the force of law". <u>Ginsburg v. Commissioner</u>, 127 T.C.

---

[5]In <u>Whitaker v. Commissioner</u>, T.C. Memo. 2017-192, at \*11, an additional penalty had been assessed for a "submission \* \* \* [that petitioner] made on August 4, 2014, in response to an IRS letter which stated (incorrectly) that it had 'no record of receiving' the 2012 joint return. That letter asked petitioner to 'please send us a newly signed copy of your return,' and he complied with that request. Respondent in his post-trial brief 'concedes that petitioner is not liable for the frivolous return penalty for the purported return submitted on August 4, 2014.'"

75, 87 (2006). If we assume that the IRM provision cited by the Commissioner shows that the IRS interprets section 6702 to call for a penalty even where a copy is labeled as such and does not seek an additional refund, then we think it is incorrect because it fails to distinguish a purported tax return from a mere <u>copy</u> of a purported tax return.[6]

We hold that Mrs. Kestin's six plainly marked photocopies sent to the IRS with her letters did not purport to be tax returns and are not subject to the penalty under section 6702(a).

### C. Other procedural issues

#### 1. Supervisory approval

On the record before us at the time we denied the Commissioner's motion for summary judgment by our order of May 7, 2018, we were unable to hold that the Commissioner had complied with the supervisory approval requirement of section 6751(b)(1) with respect to the penalties at issue here. Given the evidence

---

[6]This is not to say that a copy of a purported return may never be subject to a penalty under section 6702(a). For example, the IRS may have received information about an individual's income or withholding and yet have no record of having received a return from the individual. If the IRS notifies the individual that no return has been received, and if the individual responds with a copy of a purported return that he claims to have previously filed and on which copy he relies to report his income, then we do not rule out the possibility that the copy might constitute a purported return of tax for purposes of imposing a frivolous return penalty.

at trial, however, the Commissioner has met his burden of production under section 7491(c) to show compliance with the supervisory approval requirement of section 6751(b)(1).

### a. "Automatically calculated"

As we noted above, the supervisory approval requirement does not apply to penalties "automatically calculated through electronic means". The Commissioner acknowledges in his post-trial brief that "the seven penalty assessments at issue here are not automatically calculated by electronic means" and that the supervisory approval requirement of section 6751(b)(1) applies here.[7]

---

[7]This concession is consistent with Internal Revenue Manual (IRM) pt. 4.19.13.6.2(3) (Feb. 9, 2018) ("IRC Section 6702, Penalties for Frivolous Tax Submissions, require written supervisory approval on Form 8278"). The "calculat[ion]" of the section 6702(a) penalty is indeed very simple--i.e., $5,000 per frivolous return--and apparently for that reason, several District Courts have held that the penalty is "automatically calculated by electronic means". Holyoak v. United States, No. CV 08-08168-P4X-MHM, 2009 WL 2985690, at *4 (D. Ariz. Sept. 16, 2009), aff'd, 437 F. App'x 559 (9th Cir. 2011); Brousseau v. United States, No. 3:04-1025, 2005 WL 2177009, at *3 (M.D. Tenn. Sept. 8, 2005); Borchardt v. Commissioner, 338 F. Supp. 2d 1040, 1044 (D. Minn. 2004) (quoting Cole); Cole v. United States, No. 1:02-CV-137, 2002 WL 31495841, at *6 (W.D. Mich. Oct. 21, 2002) ("No approval of the assessment by an immediate supervisor is required because this is an automatic penalty for a fixed amount. 26 U.S.C. §§ 6751(b)(2)(B) and 6702" (emphasis added)). Contra Schlabach v. United States, 101 Fed. Cl. 678, 685 n.14 (2011) (citing Chief Counsel Notice CC-2011-004 (Nov. 1, 2010)). Citing Cole and Borchardt, we held the section 6702(a) penalty to be "automatically calculated" in Lindberg v. Commissioner, T.C. Memo. 2010-67, slip op. at 27-28. More recently, we have

(continued...)

b. "Initial determination"

As we have shown, the approvals of the immediate supervisors were obtained before the penalties were assessed. However, as to the first two penalties--approved in April 2016 and assessed in May 2016--we must determine whether the earlier Letter 3176C constituted a previous, unapproved "initial determination". We conclude that it did not. Although it gave a stern warning about the IRS's intention to impose a penalty, its purpose was actually to invite the taxpayer to make a correction that, if made, would have the result that the IRS "will * * * not assess the frivolous return penalty." At the time Letter 3176C was sent in February 2016, one could not "determine", initially or otherwise, the application of the penalty. Rather, at that time it remained to be seen--depending on the Kestins' actions--whether they would be liable for the penalty.

Interpretation and application of the supervisory approval requirement in section 6751(b)(1) is made difficult by the ambiguity of the operative phrase-- "initial determination of such assessment"--and by the fact that, no matter how it is

---

[7](...continued)
held that a penalty is "automatically calculated by electronic means" when it is "determined mathematically by a computer software program without the involvement of a human IRS examiner". Walquist v. Commissioner, 152 T.C. ___, ___ (slip op. at 15) (Feb. 25, 2019); see also ATL & Sons Holdings, Inc. v. Commissioner, 152 T.C. ___, ___ (slip op. at 21-25) (Mar. 13, 2019).

interpreted, the statute will achieve only imperfectly the congressional purpose of ensuring "that penalties [w]ould only be imposed where appropriate and not as a bargaining chip." Chai v. Commissioner, 851 F.3d 190, 219 (2d Cir. 2017) (quoting S. Rept. No. 105-174, at 65 (1998), 1998-3 C.B. 537, 601), aff'g in part, rev'g in part T.C. Memo. 2015-42. However, we know to look for a "determination" of a penalty liability, not just an indication of a possibility that such a liability will be proposed. Letter 3176C is not an unequivocal "communication that advises the taxpayer that penalties will be proposed", Clay v. Commissioner, 152 T.C. ___, ___ (slip op. at 44) (Apr. 24, 2019) (emphasis added); it is instead a contingent communication warning that a penalty will be assessed if the taxpayer's frivolous filing is "not immediately corrected" and assuring that the IRS "will * * * not assess" the penalty if the taxpayer does correct her return.

The distinctive feature of the Letter 3176C is its granting the taxpayer an opportunity to withdraw her frivolous return and avoid the penalty. In the case of the companion penalty under section 6702(b) for "specified frivolous submissions", the statute itself (in section 6702(b)(3)) provides that the IRS may "provide[] a person with notice that a position is a specified frivolous submission". When the IRS does so, the section 6702(b) penalty "shall not apply" (and

therefore cannot be "determined") until after the taxpayer's opportunity to retract his frivolous position. "[P]rovid[ing]" such "notice" and opportunity to withdraw cannot fairly be characterized as the illicit offering of a "bargaining chip". Rather, in the case of the section 6702(b) penalty, the notice is provided in compliance with an express congressional directive; and in the case of the section 6702(a) penalty, the notice is provided pursuant to an equivalent administrative policy adopted by the IRS.[8] If the IRS gives such a notice, then liability for the penalty could arise only after the opportunity provided by that notice has been given. We think that, by its nature, this Letter 3176C is not an "initial determination" of a penalty assessment.[9]

---

[8]See IRM pt. 4.10.12.5.1(5) (Sept. 5, 2014) ("Note: IRC 6702 does not require notification to a taxpayer that the position claimed on the return is frivolous, but notification should be provided as a matter of policy").

[9]The potential "bargaining chip" abuse that led Congress to enact section 6751(b)(1) is apparently not present when a Letter 3176C warns of a possible penalty under section 6702(a). A Letter 3176C cannot be used as a means to induce a taxpayer's agreement to proposed adjustments to her tax liability. A return subject to penalty under section 6702(a) is, by definition, inadequate to enable the Commissioner to take a position concerning the taxpayer's correct tax liability. The Letter 3176C requested corrected returns from petitioner precisely to enable respondent to make a determination of her correct tax liability and to propose any adjustments to her reported liability necessary to arrive at the correct liability. In the absence of a nonfrivolous return, there can be no bargaining over proposed adjustments and thus no bargaining chip to induce agreement to a possibly unjustified settlement.

### 2. The adequacy of the NFTL and CDP notice

Mrs. Kestin alleges that both the NFTL and the CDP notice reflected two errors that made them invalid: Because of these supposed errors, the two penalties assessed on May 2, 2016, "are not part of a filed lien, those two assessments [made in May 2016] were not properly before Appeals, and Appeals determination was not properly before this Court." We conclude she is mistaken.

### a. Penalty amount

The IRS assessed seven $5,000 penalties against Mrs. Kestin, totaling $35,000, but the NFTL and the CDP notice both stated an amount due not of that amount but of only $33,842. That difference does not have the significance that Mrs. Kestin suggests. The total assessments were indeed $35,000, but because a portion of that total had been satisfied (by the crediting of another year's income tax overpayment against the penalty liabilities), the amount due was $33,842. Stating the larger amount would have been an error. By stating the amount $33,842, the NFTL gave a potential creditor notice of the actual liability for which the Government had a lien, and the CDP notice gave Mrs. Kestin notice of the actual liability that would be under consideration in the CDP hearing. Neither the NFTL nor the CDP notice stated an incorrect amount.

### b.     Assessment date

The NFTL stated the "Date of Assessment" as "09/19/2016", thus giving the correct date of the $25,000 second assessment but omitting the date of the May 2016 assessment of $10,000.  Mrs. Kestin stresses this omission.  But apart from asserting the mere fact that the first of the assessment dates was omitted, she does not give any argument or explanation of how this omission from the NFTL would have created any legal or factual prejudice or disadvantage for any creditor or other third party.  And because the amount of the liability was correctly stated on the NFTL, we cannot perceive any possible disadvantage that would result from stating the September 2016 assessment date but omitting the May 2016 assessment date.[10]

Likewise, Mrs. Kestin stresses that the CDP notice similarly states the September 2016 assessment date but is silent as to the May 2016 assessment date.  But again, she makes no attempt to explain how the omission of one of those dates from the CDP notice would have prejudiced or disadvantaged her in any way in

---

[10]"The purpose of the NFTL is to give constructive notice, and where there is such notice, a minor defect in filing will be overlooked."  Cennamo v. United States, 147 B.R. 540, 543 (Bankr. C.D. Cal. 1992); see Sills v. United States (In re Sills), 82 F.3d 111, 113 (5th Cir. 1996) (holding that a minor defect in an NFTL is insufficient to render it void); see also Richter's Loan Co. v. United States, 235 F.2d 753, 755 (5th Cir. 1956).

the CDP process. The pertinent regulations do not explicitly require that the CDP notice include the assessment date or dates. Cf. 26 C.F.R. sec. 301.6320-1(a)(2), Q&A-A10, Proced. & Admin. Regs. The amount of the unpaid liability was correctly stated in the CDP notice, and Mrs. Kestin does not claim that she was unaware of any portion of the penalty liabilities that the IRS asserted; much less does she explain what she would or could have done differently during the CDP process if the May 2016 assessment date had been included on the CDP notice. Mrs. Kestin thus makes no showing, nor even any allegation, that her CDP notice failed to provided her with adequate notice of the underlying penalties. We hold that the CDP notice gave Mrs. Kestin adequate notice of the penalties assessed in May 2016.[11]

---

[11]See Mangum v. Commissioner, T.C. Memo. 2016-24, at *18-*19 ("the original notice of Federal tax lien, albeit with an incorrect assessment date, was sufficient to give the Mangums notice as required under section 6320") (citing Sage v. United States, 908 F.2d 18, 22 (5th Cir. 1990) ("a notice of assessment and demand for payment [under section 6303] that contains a technical error will be held valid where the taxpayer has not been misled by the error"), and Sanderling, Inc. v. Commissioner, 571 F.2d 174, 176 (3d Cir. 1978) ("A notice of a deficiency, even if it contains error, may nonetheless be valid where the taxpayer has not been misled as to the proper year involved or the amounts in controversy"), aff'g in part 66 T.C. 743 (1976) and 67 T.C. 176 (1976)).

### 3. The adequacy of the NOD

Appeals' NOD reflects a similar arguable error:  In restating Mrs. Kestin's position, the attachment to the NOD states that "you submitted an amended tax return (Form 1040X) on <u>two</u> separate occasions claiming one or more frivolous positions", whereas in fact there were <u>seven</u> such occasions that the IRS penalized. This prompts Mrs. Kestin to contend that "[b]ecause Appeals failed to execute its statutory duties to review the September 19, 2016 penalties and to meet its burden concerning them, there is no determination for this Court to review."[12]

We are not persuaded that the explicit mentioning of two penalties causes the NOD to fail to serve for all seven.  The NOD states that it pertains to "a Civil Penalty assessed for 2014 under IRC 6702", and all seven penalties are pursuant to section 6702 and do derive from 2014.  The NOD states that it concerns "the Notice of Federal Tax Lien", and that NOD addressed the $33,842 that was the balance due on all seven penalties.  As we recently explained:  "If a notice of determination specifies the taxable periods, the liabilities, and the collection action to which it relates, or at the very least provides sufficient information so that the taxpayer cannot reasonably be deceived as to these items, the notice is generally

---

[12]If this were true, then Mrs. Kestin's CDP hearing as to the five penalties assessed September 19, 2016, would still be pending, and Appeals could issue an NOD at any time.

valid." <u>First Rock Baptist Church Child Dev. Ctr. v. Commissioner</u>, 148 T.C. 380, 387 (2017). We do not see any indication that Mrs. Kestin was at all misled about the seven-penalty scope of the NOD. We have jurisdiction to address all seven penalties, including the five that are the subject of this contention (and that we do not sustain).[13]

## CONCLUSION

Appeals' determination was not an abuse of discretion insofar as it upheld the single $5,000 penalty on Mrs. Kestin's original frivolous Form 1040X and sustained the NFTL to that extent. However, its determination to uphold the additional penalties on the six photocopies of the return and to sustain the NFTL to that extent was in error and was therefore an abuse of discretion. To give effect to that conclusion,

<u>An appropriate order and decision</u>

<u>will be entered</u>.

---

[13]We need not address an argument for which Mrs. Kestin quotes our opinion in <u>Antioco v. Commissioner</u>, T.C. Memo. 2013-35, at *25--"Applying [SEC v.] Chenery [Corp. ("Chenery I"), 318 U.S. 80 (1943),] in the CDP context means that we can't uphold a notice of determination on grounds other than those actually relied upon by the Appeals officer"--to contend that <u>Chenery I</u> bars the IRS from applying the determination in the NOD to the five penalties not explicitly mentioned there. Because for other reasons we do not sustain the five penalties that are the subject of this argument, we need not decide this issue.